1
2
3
4

HORVITZ & LEVY LLP
 Jeremy B. Rosen (Bar No. 192473)
  *jrosen@horvitzlevy.com*
 505 Sansome Street, Suite 1550
 San Francisco, California 94111
 Telephone: +1.415.462.5600

5
6
7
8
9
10
11

 Jasjaap S. Sidhu (Bar No. 335862)
  *jsidhu@horvitzlevy.com*
 3601 West Olive Avenue, 8th Floor
 Burbank, California 91505
 Telephone: +1.818.995.0800

LATHAM & WATKINS LLP
 Sean M. Berkowitz (*pro hac vice*)
  *sean.berkowitz@lw.com*
 330 North Wabash Avenue, Suite 2800
 Chicago, Illinois 60611
 Telephone:  +1.312.876.7700

 Roman Martinez (*pro hac vice*)
  *roman.martinez@lw.com*
 Drew R. Wisniewski (*pro hac vice*)
  *drew.wisniewski@lw.com*
 Blake E. Stafford (*pro hac vice*)
  *blake.stafford@lw.com*
 Joseph E. Sitzmann (*pro hac vice*)
  *joseph.sitzmann@lw.com*
 555 Eleventh Street, NW, Suite 1000
 Washington, D.C. 20004-1304
 Telephone:  +1.202.637.2200

12
13

*Attorneys for Defendant Walmart Inc.*

14

## UNITED STATES DISTRICT COURT

15

## CENTRAL DISTRICT OF CALIFORNIA

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| RISA POTTERS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>WALMART, INC.; BLOCK, INC.; and DOES 1-10 inclusive,<br><br>        Defendants. | Case No. 2:23-cv-10335-WLH-MAR<br><br>**DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hon. Wesley L. Hsu<br>Date: May 10, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>Complaint Served:  December 13, 2023<br>Trial Date: None Set |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

    A.    Cash App Deposit Services At Walmart.............................. 2

    B.    Plaintiff's Cash App Deposits............................................. 3

    C.    Plaintiff's Lawsuit............................................................... 4

ARGUMENT ...................................................................................... 5

I.    PLAINTIFF'S BREACH OF IMPLIED COVENANT CLAIM MUST BE DISMISSED........................................................... 6

II.    PLAINTIFF'S NEGLIGENCE CLAIM MUST BE DISMISSED...................................................................................... 8

    A.    Plaintiff's Negligence Claim Is Barred By The Economic Loss Rule........................................................... 8

    B.    Plaintiff Fails To Adequately Allege That Walmart Had A Duty To Protect Her From Third-Party Fraudsters........................... 10

III.    PLAINTIFF'S CLRA AND UCL CLAIMS MUST BE DISMISSED.................................................................................. 11

    A.    Plaintiff Fails To State A CLRA Claim.............................. 11

    B.    Plaintiff Fails To State A UCL Claim ............................... 13

        1.    Plaintiff Fails To Adequately Allege Unlawful Conduct By Walmart................................................. 14

        2.    Plaintiff Fails To Adequately Allege Unfair Conduct By Walmart................................................. 14

        3.    Plaintiff Fails To Adequately Allege Causation...................... 19

    C.    At A Minimum, Plaintiff Lacks Article III Standing To Obtain Injunctive Relief...................................................... 20

CONCLUSION.................................................................................. 22

i

DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 2:23-cv-10335-WLH-MAR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ajzenman v. Off. of Comm'r of Baseball*,
  492 F. Supp. 3d 1067 (C.D. Cal. 2020)...............................................16

*Appling v. State Farm Mut. Auto. Ins. Co.*,
  340 F.3d 769 (9th Cir. 2003) ................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................5, 12

*Bank Leumi USA v. R&R Food Servs. LLC*,
  2018 WL 6003580 (C.D. Cal. July 13, 2018) ....................................14

*Brown v. USA Taekwondo*,
  483 P.3d 159 (Cal. 2021).....................................................................10

*Camacho v. Auto. Club of S. Cal.*,
  48 Cal. Rptr. 3d 770 (Ct. App. 2006) .................................................15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  973 P.2d 527 (Cal. 1999)...............................................................14, 15

*Chazen v. Centennial Bank*,
  71 Cal. Rptr. 2d 462 (Ct. App. 1998) .................................................11

*Cisneros v. Freedom Mortg. Corp.*,
  2023 WL 6783306 (C.D. Cal. Aug. 31, 2023) ...................................15

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................20, 21

*Claridge v. RockYou, Inc.*,
  785 F. Supp. 2d 855 (N.D. Cal. 2011)...........................................11, 12

*Clark v. InComm Fin. Servs., Inc.*,
  2023 WL 8522952 (C.D. Cal. Dec. 1, 2023) ...............................15, 16

*Coste v. Fox Beverages USA Inc*,
  2023 WL 8522987 (C.D. Cal. Oct. 10, 2023) ....................................17

ii

DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 2:23-cv-10335-WLH-MAR

*Das v. WMC Mortg. Corp.*,
  831 F. Supp. 2d 1147 (N.D. Cal. 2011) ........................................................ 7

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .............................................. 14, 15, 16, 17

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ................................................................ 17

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ................................................................. 17

*Dubbs v. Glenmark Generics Ltd.*,
  2014 WL 1878906 (C.D. Cal. May 9, 2014) ............................................. 11

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ................................................................ 10

*Foundry IV Inc. v. Hard Carry Gaming Inc.*,
  2024 WL 211010 (C.D. Cal. Jan. 3, 2024) ............................................... 14

*Griffin v. Green Tree Servicing, LLC*,
  166 F. Supp. 3d 1030 (C.D. Cal. 2015) .................................................. 6, 7

*Guz v. Bechtel Nat'l, Inc.*,
  8 P.3d 1089 (Cal. 2000) .......................................................................... 6

*Herron v. Best Buy Co.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................... 18

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................. 14, 15, 18

*Honey Baked Ham Inc. v. Honey Baked Ham Co.*,
  2021 WL 3264423 (C.D. Cal. Mar. 24, 2021) ......................................... 16

*Ibarra v. Pharmagenics LLC*,
  660 F. Supp. 3d 914 (C.D. Cal. 2023) .................................................... 21

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................... 8

*Jackson v. Gen. Mills, Inc.*,
  2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) .......................................... 21

*Jeong v. Nexo Fin. LLC*,
  2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ...................................................... 12

*Kuhn v. Three Bell Cap.*,
  2023 WL 6780524 (N.D. Cal. Oct. 12, 2023) ...................................................... 7

*Lagrisola v. N. Am. Fin. Corp.*,
  314 Cal. Rptr. 3d 941 (Ct. App. 2023) ................................................................ 19

*Lingad v. Indymac Fed. Bank*,
  682 F. Supp. 2d 1142 (E.D. Cal. 2010) ................................................................ 7

*Lunn v. City of Los Angeles*,
  629 F. Supp. 3d 1007 (C.D. Cal. 2022) ................................................................ 5

*Millam v. Energizer Brands, LLC*,
  2022 WL 19001330 (C.D. Cal. Dec. 9, 2022) .......................................... 17, 18

*QDOS, Inc. v. Signature Fin., LLC*,
  225 Cal. Rptr. 3d 869 (Ct. App. 2017) ................................................................ 16

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
  85 Cal. Rptr. 2d 301 (Ct. App. 1999) .......................................... 15, 17

*Searle v. Wyndham Int'l, Inc.*,
  126 Cal. Rptr. 2d 231 (Ct. App. 2002) ................................................................ 17

*Sheen v. Wells Fargo Bank, N.A.*,
  505 P.3d 625 (Cal. 2022) .......................................................................... 8, 9

*Smith v. Sabre Corp.*,
  2017 WL 11678765 (C.D. Cal. Oct. 23, 2017) .................................................. 15

*Spiegler v. Home Depot U.S.A., Inc.*,
  552 F. Supp. 2d 1036 (C.D. Cal. 2008),
  *aff'd*, 349 F. App'x 174 (9th Cir. 2009) .......................................... 6, 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .......................................................................................... 20

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................................... 20

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023) ................................... 9, 10, 11, 14

*In re Turner*,
859 F.3d 1145 (9th Cir. 2017) ................................................................ 13, 19

*Watkins v. MGA Entm't, Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021) ........................................................ 12

*Weizman v. Talkspace, Inc.*,
2023 WL 8461173 (N.D. Cal. Dec. 6, 2023) ............................................... 21

*Wilson v. Hynek*,
144 Cal. Rptr. 3d 4 (Ct. App. 2012) ........................................................... 16

*Wright v. Charles Schwab & Co.*,
2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ............................................. 9

*Yeboah v. Wilmington Tr., N.A.*,
2019 WL 4187378 (C.D. Cal. May 28, 2019) .............................................. 7

**STATUTES**

Cal. Civ. Code §§ 1750 *et seq.* .................................................................... 2

Cal. Civ. Code § 1761(d) ............................................................................. 12

Cal. Civ. Code § 1770(a)(26) .................................................................. 2, 11, 12

Cal. Civ. Code § 1780 ............................................................................. 11, 12

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................................................... 2

Cal. Bus. & Prof. Code § 17200 ................................................................. 13

Cal. Bus. & Prof. Code § 17203 ................................................................. 13

Cal. Bus. & Prof. Code § 17204 ................................................................. 13

**RULES**

Federal Rule of Civil Procedure 12(b)(1) .................................................... 5

Federal Rule of Civil Procedure 12(b)(6) .................................................... 5

**INTRODUCTION**

Plaintiff Risa Potters seeks to hold Defendant Walmart Inc. liable after an anonymous third-party fraudster allegedly scammed Plaintiff into depositing her money into the fraudster's Cash App accounts.  Plaintiff does not allege that Walmart has any connection to the fraudster or the scam, nor does she allege that Walmart induced her to part with her money.  Instead, she claims that Walmart is responsible because Walmart followed her instructions and processed her Cash App deposits as she requested.

Walmart sympathizes with Plaintiff and other fraud victims, and it has implemented and refined a robust anti-fraud program to help customers avoid the ever-evolving schemes perpetrated by fraudsters.  But Plaintiff's claims in this case—all premised on the notion that Walmart should have done more to protect her from the third-party fraudster—are meritless and should be dismissed.

*First*, Plaintiff asserts that Walmart breached the implied covenant of good faith and fair dealing in an alleged contract with Walmart by failing to advise her about potential fraud and failing to prevent her deposits.  But Plaintiff does not adequately plead the existence of a contract, let alone link her claim to any specific contract provision.  And she certainly does not explain how Walmart frustrated any contract provision in breach of the implied covenant.  Indeed, Plaintiff's theory seems to be that she contracted with Walmart for the provision of Cash App deposit services, and Walmart frustrated that contract by processing Plaintiff's deposits as she requested.  That theory makes little sense.

*Second*, Plaintiff tries to turn her contract claim into a negligence claim.  This effort fails under the economic loss rule, which bars negligence claims that rest on purely economic injuries.  In any event, under well-settled negligence principles, Walmart did not owe Plaintiff a duty to protect her from third-party criminal conduct.  Either way, the negligence claim must be dismissed.

*Third*, Plaintiff asserts statutory claims under the California Consumers Legal

Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* These claims fail too. Plaintiff is not a "consumer" under the CLRA because she did not purchase a tangible good or service from Walmart. Her CLRA claim also rests on the assertion that Cash App deposits are an "illegal" "financial product," Cal. Civ. Code § 1770(a)(26)—a theory that has zero support in the law. As for the UCL claim, Plaintiff has failed to plausibly show that Walmart's conduct—processing Cash App deposits as requested by customers—violates an established public policy or is immoral or substantially injurious such that the conduct could be deemed "unlawful" or "unfair." And she has no Article III standing to seek injunctive relief in any event. The CLRA and UCL claims must be dismissed as well.

## BACKGROUND

### A.     Cash App Deposit Services At Walmart

Walmart is a retailer that also offers access to various financial services. Compl. ¶¶ 6, 19. As relevant here, since October 2021, Walmart has offered customers a way to deposit paper money into their personal Cash App accounts. *Id.* ¶¶ 61-63. Cash App is a primarily smartphone-based application developed and operated by Block, Inc. that allows users to electronically transfer money to other Cash App users. *See id.* ¶¶ 12, 18, 47. To do so, a user must sign up for a Cash App account and add funds to their account, which they may then send via the application to other users. *Id.* ¶¶ 18, 47.

Cash App users can add funds to their Cash App accounts in multiple ways. For example, users can electronically add funds directly from their bank accounts or debit cards. *See id.* ¶ 18. Cash App also enables users to deposit paper money into their Cash App accounts at several participating brick-and-mortar retailers, such as Walmart, Walgreens, and 7-Eleven. *See id.* ¶¶ 18, 47. The deposits are processed through VanillaDirect, a platform operated by a third party, InComm Financial Services. *Id.* ¶ 18.

1    Cash App deposits are accomplished through user-specific Cash App
2  barcodes generated within the application. *Id.* ¶ 47. Each barcode is active for about
3  ten minutes. *Id.* The user presents the barcode for the retailer to scan, along with
4  the paper money the user seeks to deposit. *Id.* ¶ 63. The provided money is then
5  added to the Cash App account associated with the presented barcode. *Id.* Cash
6  App charges a $1 fee for each deposit, which is deducted from the amount deposited
7  in the designated account. *See id.* ¶ 48.

8    Walmart added Cash App deposits to its slate of financial services offerings
9  in October 2021 to give customers a "more convenient and efficient way" to "pay
10 their bills or fund prepaid accounts nationwide at more than 4,700 Walmart
11 locations." *Id.* ¶¶ 61-63. Although Walmart uses its own point-of-sale systems to
12 process Cash App deposits, *id.* ¶ 72, it has partnered with InComm for use of its
13 VanillaDirect platform, which serves as the digital connection between Walmart and
14 Cash App and allows Walmart (as InComm's agent) to deposit paper money into
15 depositors' Cash App accounts, *id.* ¶¶ 18, 47, 61-63. Ultimately, Walmart's decision
16 to partner with InComm and provide Cash App deposit services reflects Walmart's
17 decades-long mission of working with third parties to offer customers affordable and
18 accessible financial services. *See id.* ¶¶ 19, 62-63.[1]

19   **B.    Plaintiff's Cash App Deposits**

20   Over a two-day period in March and April 2023, Plaintiff Risa Potters made
21 several Cash App deposits at three Walmart locations in the San Fernando Valley
22 and Simi Valley areas. *Id.* ¶¶ 113, 117-18, 121. Plaintiff alleges that she was
23 induced to make these deposits by a fraudster impersonating a police officer. *Id.*
24 ¶¶ 101-06, 115, 117. Plaintiff does not allege that this fraudster had any connection

25

26   [1] As Walmart explains in greater detail in its motion to strike, Cash App
27 deposits are *not* "money transfers," a term that refers to a separate and distinct
financial service in which customers at one retail location electronically transfer
money to a different retail location for pick-up by another customer. Because
28 Plaintiff did not send or receive a money transfer, the allegations in her complaint
about Walmart's provision of "money transfers" are irrelevant here.

1   to Walmart, nor does she allege that the fraud occurred at Walmart.  Rather, she
2   alleges that the fraudster tricked her into making the deposits over the phone, before
3   Plaintiff set foot in any Walmart store.

4       Plaintiff alleges that on March 31, 2023, the fraudster called her from an
5   unknown number.  *Id.* ¶ 101.  Claiming to be a police officer from the Madera
6   County Sheriff's Office, the fraudster told Plaintiff that she had failed to appear in
7   court pursuant to a subpoena.  *Id.* ¶¶ 102-03.  The fraudster told Plaintiff that if she
8   wanted to avoid immediate arrest, she should post a $10,000 bond by making a series
9   of Cash App deposits at Walmart locations.  *Id.* ¶¶ 105-07.  Plaintiff alleges that she
10  had never heard of Cash App before this incident.  *Id.* ¶ 107.  The fraudster gave
11  Plaintiff step-by-step instructions for making the Cash App deposits at specific
12  Walmart locations, telling her that he would send her Cash App barcodes via text
13  message.  *Id.*

14      Plaintiff then completed Cash App deposits at three different Walmart
15  locations, each time presenting Walmart employees with the barcodes she had
16  received from the fraudster.  *Id.* ¶¶ 113, 118, 121.  On March 31, she made three
17  $500 deposits at a Walmart location in Simi Valley.  *Id.* ¶¶ 108, 113.  The next
18  morning, she traveled to a Walmart location in West Hills, where she made four
19  $500 deposits.  *Id.* ¶¶ 116-18.  And later that day, she deposited $1,000 at a Walmart
20  location in Porter Ranch.  *Id.* ¶¶ 120-21.  Ultimately, as Plaintiff was driving to a
21  police station to dispute the subpoena, she "realized the caller was likely not a police
22  officer" and that "she was likely the victim of fraud."  *Id.* ¶ 123.

23      **C.    Plaintiff's Lawsuit**

24      On December 8, 2023, Plaintiff filed this lawsuit against Walmart and Block.
25  Although Plaintiff was "scammed" by the anonymous third-party fraudster, she
26  claims that Walmart is liable because it processed her Cash App deposits as she
27  requested, without "flagg[ing] [them] as suspicious or likely to involve fraud."  *Id.*
28  ¶¶ 5, 122.

Plaintiff asserts four claims against Walmart: (1) a breach of contract claim premised on the implied covenant of good faith and fair dealing, *id.* ¶¶ 141-51; (2) a CLRA claim predicated on the alleged sale of an "illegal" "financial product," *id.* ¶¶ 152-61; (3) a UCL claim for engaging in "unlawful" and "unfair" business practices, *id.* ¶¶ 162-76; and (4) a negligence claim, *id.* ¶¶ 177-85. Plaintiff seeks monetary damages for her contract and negligence claims, *id.* ¶¶ 151, 184; injunctive relief for her CLRA claim, *id.* ¶ 159; and injunctive relief and equitable monetary relief for her UCL claim, *id.* ¶ 188.

Plaintiff also brings this suit as a putative class action, proposing to represent a "Nationwide Walmart Class" for her contract and negligence claims and a "California Walmart Subclass" for all four claims. *Id.* ¶ 128; *see id.* ¶¶ 142, 153, 163, 178. The classes consist of "[a]ll persons who incurred unreimbursed losses from January 1, 2021 to the present due to fraudulent money transfers initiated at and/or through a Walmart store location in the United States" or (for the subclass) "in California." *Id.* ¶ 128.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "the complaint must allege 'sufficient factual matter'" to establish "subject-matter jurisdiction," including facts "establishing [that the plaintiff has] Article III standing." *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1011 (C.D. Cal. 2022) (citation omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiff's claims do not satisfy these standards and must be dismissed.

# I.     PLAINTIFF'S BREACH OF IMPLIED COVENANT CLAIM MUST BE DISMISSED

Plaintiff's complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.  *See* Compl. ¶¶ 141-51 (Count One).  According to Plaintiff, she "contracted" with Walmart "for the provision of financial services," and Walmart breached the implied covenant by (1) "fail[ing] to fairly investigate and/or prevent" her Cash App deposits, (2) "failing to adequately advise" Plaintiff about the risks of fraud, and (3) "failing to adhere to and implement adequate fraud-prevention policies." *Id.* ¶¶ 143, 148.  But Plaintiff fails to allege the existence of a specific contract with Walmart, and she also fails to link Walmart's alleged failures to any specific term of that contract.  For either of these reasons, Plaintiff's implied covenant claim must be dismissed.

Under California law, the implied covenant of good faith and fair dealing "ensure[s] [that] one contracting party does not unfairly frustrate the other party's right to receive the benefits of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003).  The "purpose of the implied covenant" is "to assure compliance with the terms of the parties' contract[]." *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1054 (C.D. Cal. 2008), *aff'd*, 349 F. App'x 174 (9th Cir. 2009).  The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* (quoting *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000)).  Accordingly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1048 (C.D. Cal. 2015) (citation omitted).

Here, Plaintiff identifies no specific contract provision that was frustrated. Indeed, she fails to properly allege a contract at all, only conclusorily stating that she "contracted" with Walmart "for the provision of financial services." Compl. ¶ 143.

Nor does Plaintiff allege that she provided consideration *to Walmart* in exchange for these financial services. *See id.* ¶ 48 (alleging only that "*Cash App* charges a $1 fee for every paper money Cash App deposit"). "Absent an allegation of consideration, a mere assurance or promise" by Walmart that it would deposit her money onto Cash App barcodes "does not plausibly allege that there was a binding and enforceable contract." *Kuhn v. Three Bell Cap.*, 2023 WL 6780524, at *3 (N.D. Cal. Oct. 12, 2023). As a result of these failings, Plaintiff has necessarily failed to allege that the basis of her implied covenant claim falls within the agreement of the parties. *See, e.g.*, *Griffin*, 166 F. Supp. 3d at 1048 (dismissing implied covenant claim because the plaintiff did not "identify the specific contractual provision that she contends gives rise to any of [the alleged] implied duties"); *Yeboah v. Wilmington Tr., N.A.*, 2019 WL 4187378, at *3 (C.D. Cal. May 28, 2019) (same); *Lingad v. Indymac Fed. Bank,* 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010) (same).

Plaintiff's allegations also confirm that, rather than breaching any implied covenant, Walmart performed precisely the "financial services" that Plaintiff requested. Plaintiff alleges that she asked Walmart employees to help her deposit money via Cash App barcodes that she provided to the employees. Compl. ¶¶ 110, 118, 121. Plaintiff then alleges that these employees "facilitated" these deposits as she requested. *Id.* ¶ 122; *see also id.* ¶¶ 113, 118, 121. Thus, if Plaintiff formed a contract for "financial services" with Walmart, Plaintiff's own allegations make clear that Walmart facilitated—rather than frustrated—that agreement by depositing her money into the requested Cash App accounts. And while Plaintiff now asserts that Walmart should have also taken certain anti-fraud measures, *id.* ¶ 148, these allegations all purport to "impose substantive duties or limits" on Walmart "beyond those incorporated in the specific terms" of any conceivable agreement Plaintiff might have had with Walmart. *Spiegler*, 552 F. Supp. 2d at 1054; *see, e.g.*, *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1165 (N.D. Cal. 2011) (dismissing

1   implied covenant claim based on "alleged contractual duties" that exceeded the

2   "specific terms of the [contract]").

3       Ultimately, Plaintiff fails to allege that the specific terms of her "contract"

4   with Walmart demanded anti-fraud measures, and Plaintiff cannot now use the

5   implied covenant to add new terms.  Plaintiff's implied covenant claim must be

6   dismissed.

7   **II.   PLAINTIFF'S NEGLIGENCE CLAIM MUST BE DISMISSED**

8       Plaintiff's negligence claim is also deficient.  *See* Compl. ¶¶ 177-85 (Count

9   Four).  This claim is barred by the economic loss rule.  And it fails on its own terms

10  because Plaintiff has not plausibly alleged that Walmart owed a duty to protect her

11  from harm caused by the third-party fraudster.

12      **A.   Plaintiff's Negligence Claim Is Barred By The Economic Loss Rule**

13      Under California's economic loss rule, "there is no recovery in tort for

14  negligently inflicted 'purely economic losses,' meaning financial harm

15  unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*,

16  505 P.3d 625, 632 (Cal. 2022) (citation omitted).  This doctrine follows the well-

17  settled principle that "[a]n actor has no general duty to avoid the unintentional

18  infliction of economic loss on another." *Id.* (citation omitted).  And in the context

19  of commercial transactions, the economic loss rule protects economic expectations

20  and "prevents the erosion of contract doctrines by the use of tort law to work around

21  them." *Id.* at 633 (citation omitted).

22      In this case, Plaintiff does not allege any physical or property damage; her

23  negligence claim rests on purely economic losses arising from a commercial

24  transaction. *See* Compl. ¶ 184.  She thus alleges the type of negligence claim that

25  the economic loss rule forecloses. *See, e.g.*, *In re iPhone Application Litig.*, 844 F.

26  Supp. 2d 1040, 1064 (N.D. Cal. 2012) (applying the economic loss rule to dismiss a

27  negligence claim for "purely economic loss" that stemmed from "disappointed

28  expectations from a commercial transaction").

8

DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 2:23-cv-10335-WLH-MAR

Indeed, the economic loss rule applies with particular force here given Plaintiff's allegation that her dealings with Walmart are governed by a "contract[]." Compl. ¶ 143.[2]  Under the "contractual economic loss rule," there is "no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." *Sheen*, 505 P.3d at 632-33.  This rule bars "tort claims for monetary losses between contractual parties" that "arise from—or are not independent of—the parties' underlying contracts." *Id.* at 633; *see, e.g.*, *Tristan v. Bank of Am.*, 2023 WL 4417271, at *14-15 (C.D. Cal. June 28, 2023) (dismissing negligence claim against bank for failure to protect plaintiffs from sending money to third-party fraudsters because "the alleged tort damages are the same economic losses arising from the alleged breach of contract").

Here, Plaintiff alleges that "Walmart contracted with Plaintiff … for the provision of financial services."  Compl. ¶ 143.  The alleged conduct underlying Plaintiff's contract-based claim is the same alleged conduct underlying her negligence claim.  *Compare id.* ¶ 148 (alleging Walmart failed to implement certain anti-fraud measures for purposes of contract claim), *with id.* ¶¶ 181-82 (alleging Walmart failed to implement the same anti-fraud measures for purposes of negligence claim).  Thus, because Plaintiff "allege[s] negligently inflicted economic losses without proffering allegations of physical or property damage, and [because] the alleged tort damages are the same economic losses arising from the alleged breach of contract," Plaintiff's "negligence claim is precluded by the economic loss rule." *Tristan*, 2023 WL 4417271, at *15; *see also, e.g.*, *Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at *3-4 (N.D. Cal. Nov. 20, 2020) (dismissing negligence claim based on a bank's allegedly defective trading system "because plaintiff allege[d] only an economic loss").

---

[2] To be clear, Plaintiff's negligence claim is barred under the economic loss rule even if (as Walmart has argued) Plaintiff has failed to adequately allege the elements of a contract.  *See Sheen*, 505 P.3d at 933 ("[T]here does not need to be a viable breach of contract claim for the economic loss rule to apply.").

**B.**     **Plaintiff Fails To Adequately Allege That Walmart Had A Duty To Protect Her From Third-Party Fraudsters**

Plaintiff's negligence claim also fails because she has not properly alleged that Walmart had a duty to protect her from third-party fraudsters.

Under California law, "as a general matter, there is no duty to act to protect others from the conduct of third parties … nor to warn those endangered by such conduct." *Brown v. USA Taekwondo*, 483 P.3d 159, 164 (Cal. 2021) (citations omitted).    This rule "derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter." *Id.* at 165 (citation omitted).  "Misfeasance is when a defendant makes the plaintiff's position worse while nonfeasance is when a defendant does not help a plaintiff." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1100-01 (9th Cir. 2019). Under this distinction, a "'person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another' from that peril." *Brown*, 483 P.3d at 164 (citation omitted).

Plaintiff's complaint alleges that a "scammer"—with no affiliation to Walmart—tricked Plaintiff into consummating Cash App deposits using barcodes sent by that scammer.  *See* Compl. ¶¶ 66, 107, 123.  Thus, the "scammer," not Walmart, "scammed" and committed "fraud" against Plaintiff.  *Id.* ¶¶ 123, 126. Although Plaintiff alleges that Walmart "facilitate[d] the scams by failing to" take certain anti-fraud measures to protect Plaintiff when processing her Cash App deposits, *id.* ¶¶ 29, 181-83, that is precisely the type of nonfeasance that does not give rise to a duty.  *See, e.g.*, *Brown*, 483 P.3d at 165 ("nonfeasance" includes "a failure to take positive steps to benefit others").

Indeed, Plaintiff's claim is analogous to the type of negligence claim repeatedly rejected in the context of banks and other financial services providers.  "It is well established that banks do not owe their customers a duty to supervise account activity, or to inquire as to why funds are being withdrawn or transferred." *Tristan*,

2023 WL 4417271, at *15.  Nor do banks have a duty to "intervene in suspicious activities."  *Id.* (quoting *Chazen v. Centennial Bank*, 71 Cal. Rptr. 2d 462, 466 (Ct. App. 1998)).  Applying that rule, *Tristan* held that Bank of America had no duty to protect customers from being scammed into sending money via the "Zelle mobile application" to "malicious third parties" or to "warn of known risks and/or dangers associated with the Zelle mobile application."  *Id.*  That same reasoning applies here: Walmart owed no legal duty to Plaintiff to protect her from harm caused by a third-party fraudster.

## III.   PLAINTIFF'S CLRA AND UCL CLAIMS MUST BE DISMISSED

Counts Two and Three of Plaintiff's complaint assert claims for equitable relief under two California statutes—the CLRA and the UCL.  *See* Compl. ¶¶ 152-61 (CLRA); *id.* ¶¶ 162-76 (UCL).  These claims are meritless.  And even if they had any traction, Plaintiff's claims for injunctive relief under these statutes must be dismissed for lack of Article III standing.

### A.   Plaintiff Fails To State A CLRA Claim

The CLRA authorizes suit by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770."  Cal. Civ. Code § 1780.  In this case, Plaintiff's CLRA claim rests on an alleged violation of Section 1770(a)(26), which prohibits "[a]dvertising, offering for sale or selling a financial product that is illegal."  *Id.* § 1770(a)(26); *see* Compl. ¶ 157.  Plaintiff's CLRA claim must be dismissed because she has failed to adequately allege (1) that she is a "consumer" as defined in the CLRA, and (2) that Walmart violated Section 1770(a)(26).

**1.  "*Consumer.*"**  "A violation of the CLRA may only be alleged by a consumer," *Dubbs v. Glenmark Generics Ltd.*, 2014 WL 1878906, at *6 (C.D. Cal. May 9, 2014) (citation omitted), which is "a strict requirement under the statute," *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).  The CLRA defines "consumer" as "an individual who seeks or acquires, by purchase or lease,

1  any goods or services for personal, family, or household purposes." Cal. Civ. Code
2  § 1761(d).

3      Plaintiff's complaint fails this requirement in two ways. *First*, although
4  Plaintiff claims that "Cash App deposits" are "services" under the CLRA, Compl.
5  ¶ 156, California precedent makes clear that such "intangible" financial products are
6  not "goods or services" covered by the CLRA. *See Jeong v. Nexo Fin. LLC*, 2022
7  WL 174236, at *23-24 (N.D. Cal. Jan. 19, 2022) (collecting cases).

8      *Second*, the "phrase 'purchase' or 'lease'" demands a "tangible form of
9  payment" from the plaintiff. *Claridge*, 785 F. Supp. 2d at 864. A plaintiff who does
10  not *herself* purchase or lease the relevant good or service is not a "consumer."
11  *Watkins v. MGA Entm't, Inc.*, 550 F. Supp. 3d 815, 835 (N.D. Cal. 2021). Here, the
12  complaint does not allege any facts showing that Plaintiff herself "purchase[d] or
13  lease[d]" any good or service. Instead, she simply declares that she and members of
14  the putative California subclasses "are 'consumers' as that term is defined by the
15  CLRA." Compl. ¶ 155. This sort of "[t]hreadbare recital[]" of an "element[] of a
16  cause of action" cannot survive dismissal. *Iqbal*, 556 U.S. at 678. And while
17  Plaintiff alleges that "Cash App charges a $1 fee for every paper money Cash App
18  deposit," Compl. ¶ 48, Plaintiff does not allege that *she* ever paid that fee. On the
19  contrary, it appears from the complaint that Plaintiff went to Walmart to deposit a
20  set amount of paper money, and that money was deposited without Plaintiff having
21  to pay anything. Plaintiff has not adequately alleged she is a "consumer" under the
22  CLRA.

23      **2. *Section 1770 Violation*.** Plaintiff's CLRA claim independently falls short
24  because she has not sufficiently alleged that Walmart engaged in a practice "declared
25  to be unlawful by Section 1770." Cal. Civ. Code § 1780. As noted, the only Section
26  1770-enumerated practice identified by Plaintiff is Section 1770(a)(26)'s prohibition
27  of "[a]dvertising, offering for sale, or selling a financial product that is illegal under
28  state or federal law." *Id.* § 1770(a)(26); *see* Compl. ¶ 157.

The supposed "financial product" in this case is the Cash App deposit.  But Plaintiff has failed to allege that this product itself is "illegal" under state or federal law.  Nor can she:  Cash App deposits are perfectly legitimate transactions—used by customers across the country as an efficient and cost-effective method for depositing paper money into electronic Cash App accounts.  *See* Compl. ¶¶ 62, 92.  And while a minuscule fraction of these Cash App deposits may be induced by third-party criminals, that does not make the financial product *itself* illegal.

Plaintiff's only attempt to demonstrate illegality rests on her contention that Walmart's "acts, practices, and/or omissions"—i.e., its failure to prevent her deposits or provide a robust anti-fraud warning—"are illegal" under the UCL.  *Id.* ¶ 158.  But under Section 1770(a)(26), it is the "financial product" itself that must be "illegal," not Walmart's acts.  Plaintiff has identified no state or federal law that renders Cash App deposits—the alleged "financial product"—illegal.  In any event, Plaintiff's UCL claim fails on its own terms as explained below, so even if Plaintiff could tether her CLRA claim to her UCL claim, the result is the same.  The CLRA claim must be dismissed.

## B.    Plaintiff Fails To State A UCL Claim

The UCL authorizes suit to obtain equitable relief for "unfair competition," which is defined to include (as relevant here) any "unlawful" or "unfair" "business act or practice."  Cal. Bus. & Prof. Code §§ 17200, 17203; *see* Compl. ¶¶ 169-76.  To obtain relief, the plaintiff must also allege an "economic injury [that] was the result of, i.e., *caused by*, the [challenged] business practice."  *In re Turner*, 859 F.3d 1145, 1150-51 (9th Cir. 2017) (citation omitted); *see* Cal. Bus. & Prof. Code § 17204.  Plaintiff's UCL claim does not properly allege unlawfulness, unfairness, or causation.

### 1.      Plaintiff Fails To Adequately Allege Unlawful Conduct By Walmart

"To be 'unlawful' under the UCL, the [challenged practice] must violate another 'borrowed' law." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).   And the borrowed law must be a "federal or California 'statute or regulation,'" *Tristan*, 2023 WL 4417271, at *6—so "alleged common law violations are insufficient," *Bank Leumi USA v. R&R Food Servs. LLC*, 2018 WL 6003580, at *9 (C.D. Cal. July 13, 2018).

Plaintiff alleges a UCL claim under the "unlawful" prong based only on the other claims in her complaint.  Compl. ¶¶ 169-73.  Plaintiff's common law contract and negligence claims cannot support a UCL claim.  *See Bank Leumi*, 2018 WL 6003580, at *9 (rejecting claim under UCL's unlawful prong based on "breach of contract and negligence"); *Foundry IV Inc. v. Hard Carry Gaming Inc.*, 2024 WL 211010, at *6-7 (C.D. Cal. Jan. 3, 2024) (collecting cases).  And Plaintiff's CLRA claim fails for the reasons explained above and therefore cannot support her UCL claim.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (dismissing claim under the UCL's "unlawful prong" that was "link[ed]" to dismissed CLRA claim).

### 2.      Plaintiff Fails To Adequately Allege Unfair Conduct By Walmart

Plaintiff's allegations also fail to satisfy either test governing "unfair" practices under the UCL—the "tethering" test and the "balancing" test.  *See Hodsdon*, 891 F.3d at 865.

**a.  *"Tethering" Test*.**  Plaintiff fails to state a claim under the "tethering" test established in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 544 (Cal. 1999).  That test, which is the prevailing test for unfairness applied by courts in this District, requires a plaintiff to allege a violation of "public policy" that is "tethered" to a "specific constitutional, statutory or

1  regulatory provision[]." *Smith v. Sabre Corp.*, 2017 WL 11678765, at *5 (C.D. Cal.
2  Oct. 23, 2017) (citation omitted); *see Clark v. InComm Fin. Servs., Inc.*, 2023 WL
3  8522952, at *7 (C.D. Cal. Dec. 1, 2023) ("Courts in the Central District of California
4  tend to 'follow the California appellate courts in applying the *Cel-Tech* [tethering]
5  test' to consumer actions." (citation and internal alteration omitted)).   To be
6  "sufficiently 'tethered,'" courts require "a close nexus between the challenged act
7  and the legislative policy." *Cisneros v. Freedom Mortg. Corp.*, 2023 WL 6783306,
8  at *8 (C.D. Cal. Aug. 31, 2023) (quoting *Hodsdon*, 891 F.3d at 866).

9      Plaintiff's bare allegation that "Defendants' inadequate (or even nonexistent)
10  fraud prevention policies[] offend an established public policy in the State of
11  California of preventing fraud and protecting consumers from harm," Compl. ¶ 176,
12  does not suffice.   Plaintiff fails to "tether[]" that assertion to any "*specific
13  constitutional, statutory or regulatory provision[].*" *Smith*, 2017 WL 11678765, at
14  *5 (emphasis added); *accord Cisneros*, 2023 WL 6783306, at *8.  Indeed, Plaintiff
15  points to no specific constitutional, statutory, or regulatory policy that requires
16  Plaintiff's preferred "fraud prevention policies."

17      **b.   *"Balancing" Test.***   Plaintiff's claim also fails under the pre-*Cel-Tech*
18  "balancing" test for unfairness.  Under this test, courts "weigh the utility of the
19  defendant's conduct against the gravity of the [plaintiff's] harm" to determine
20  whether that conduct (1) "offends an established public policy" or (2) "is immoral,
21  unethical, oppressive, unscrupulous or substantially injurious." *Davis*, 691 F.3d at
22  1169 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d
23  301, 316 (Ct. App. 1999)).

24      As an initial matter, the California Supreme Court has rejected the "balancing"
25  test for unfairness in the competition context as "too amorphous and provid[ing] too
26  little guidance to courts and businesses." *Cel-Tech*, 973 P.2d at 543.  And as cases
27  after *Cel-Tech* have established, the  same  concerns  warrant  abandoning  the
28  balancing test in the consumer context as well.  *See, e.g.*, *Camacho v. Auto. Club of*

*S. Cal.*, 48 Cal. Rptr. 3d 770, 776 (Ct. App. 2006) ("Definitions that are too amorphous in the context of anticompetitive practices are not converted into satisfactorily precise tests in consumer cases."). Accordingly, "California appellate courts" and courts in this District have repeatedly rejected the balancing test "as too vague a test of unfairness." *Clark*, 2023 WL 8522952, at \*7 (citing *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1080 (C.D. Cal. 2020)); *see, e.g.*, *Honey Baked Ham Inc. v. Honey Baked Ham Co.*, 2021 WL 3264423, at \*3 (C.D. Cal. Mar. 24, 2021); *Wilson v. Hynek*, 144 Cal. Rptr. 3d 4, 11 (Ct. App. 2012). Thus, this Court should not apply that test.

In any event, Plaintiff's allegations fail under the "balancing" test. Plaintiff has not shown that Walmart's conduct "offends an established public policy." *Davis*, 691 F.3d at 1169. This component of the test overlaps with the tethering test, and Plaintiff cannot satisfy it for a similar reason as discussed above: Beyond her conclusory reference to the "established public policy" of "preventing fraud and protecting consumers from harm," Compl. ¶ 176, Plaintiff has not identified any established public policy that Walmart's conduct offends.

If anything, established public policy only underscores the flaws in Plaintiff's claim. Absent unusual circumstances, banks and merchants performing routine transactional services are generally not liable for failing to uncover and prevent third-party criminal activity. The reason is straightforward: Imposing a "duty to investigate the suspicious activities of the bank's or merchant's customers" not only "run[s] the risk of violating the bank's or merchant's customers' right to privacy," but also "forc[es] the bank or merchant to act as the guarantor of their customers' transactions." *QDOS, Inc. v. Signature Fin., LLC*, 225 Cal. Rptr. 3d 869, 876 n.3 (Ct. App. 2017) (citation and internal alteration omitted). And the theory would be boundless. As Judge Easterbrook put it for the Seventh Circuit, imposing liability on service providers for their users' misconduct would sweep in the Postal Service, Federal Express, and telephone companies, all of which provide services "without

endeavoring to find out what use the customers make of the service." *Doe v. GTE Corp.*, 347 F.3d 655, 659-61 (7th Cir. 2003). Ultimately, the fact that such services "may be used to carry out illegal activities does not justify condemning their provision whenever a given customer turns out to be crooked." *Id.* at 659.

The reasoning of these cases fully applies here—and refutes the existence of any settled policy condemning Walmart's conduct. The fact that Cash App deposits may be the means of carrying out a fraud does not justify condemning their provision. Holding Walmart responsible for failing to uncover criminal misconduct of third-party fraudsters would force it to act as a guarantor without any legal duty supporting that obligation.

Plaintiff also fails to show that Walmart's conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious." *Davis*, 691 F.3d at 1169. Once again, Plaintiff merely parrots the words without identifying how Walmart's conduct satisfies the test. *See* Compl. ¶ 176. That is not enough—courts have repeatedly dismissed UCL claims that consist only of a "conclusory recitation of one of the UCL's legal standards" without specification as to "what conduct [the plaintiffs] claim is unfair, or on what allegations in the complaint [plaintiffs] rely for this claim." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020); *see, e.g.*, *Millam v. Energizer Brands, LLC*, 2022 WL 19001330, at *6 (C.D. Cal. Dec. 9, 2022); *Coste v. Fox Beverages USA Inc*, 2023 WL 8522987, at *9 (C.D. Cal. Oct. 10, 2023).

Plaintiff's other allegations reveal that Walmart's conduct was not unfair under this "'immoral' test." *CVS*, 982 F.3d at 1215. "In general," under this test, "the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices.'" *Searle v. Wyndham Int'l, Inc.*, 126 Cal. Rptr. 2d 231, 236 (Ct. App. 2002) (quoting *S. Bay*, 85 Cal. Rptr. 2d at 316). But Plaintiff does not claim that Walmart tricked, lied to, or took advantage of her, or that Walmart itself acted in any other unjust or deceptive way. Far from it, the complaint makes clear that Plaintiff was scammed

by the conduct of *the third-party fraudster*, Compl. ¶¶ 101-09, 115-17, 120, 123-24, whereas Walmart merely processed the deposits as Plaintiff requested, *id.* ¶¶ 110-113, 118, 121.  And Plaintiff does not allege that Walmart participated in the scam or was even aware of it.  Walmart's practice of following its customers' directions to process lawful Cash App deposits to customer-provided barcodes is not "unfair" within any sensible understanding of that word.  And while Plaintiff asserts that Walmart should have done more to protect her from the fraudster, the "[f]ailure to take on the role of 'global policeman'" against the misconduct of third parties "is insufficient to support liability under the UCL." *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) (citation omitted).

Moreover, if Plaintiff's vague reference to Walmart's "omissions" in her UCL claim, Compl. ¶ 176, is a reference to Walmart's alleged "failure to disclose" (or failure to "inform" or "notify" Plaintiff about) fraud risks and the intended function of Cash App deposits, *id.* ¶¶ 114, 122, 135(b), that theory cannot sustain her unfairness claim because Plaintiff does not allege that Walmart had any underlying obligation to disclose this information.  Under California law, allegations that a defendant "'fail[ed] to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical' under the balancing test." *Millam*, 2022 WL 19001330, at *7; *see Hodsdon*, 891 F.3d at 867 (same).[3]  And the alleged "failure to disclose" information "is not substantially injurious" in this case for the additional reason that information about fraud risks and Cash App deposits is "public knowledge, accessible on [the] website[s]" of Walmart and Cash App. *Hodsdon*, 891 F.3d at 867; *see* Compl. ¶¶ 62-63, 94-95.

---

[3] Generally, "[u]nder California law, there are four circumstances in which an obligation to disclose may arise: '(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" *Herron*, 924 F. Supp. 2d at 1174 (citation omitted).  Plaintiff does not even try to allege facts satisfying any of these conditions.

18

DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 2:23-cv-10335-WLH-MAR

1   Thus, even if (contrary to prevailing precedent) the balancing test for
2   unfairness applies, Plaintiff has not alleged facts sufficient to satisfy it.

3   ### 3.     Plaintiff Fails To Adequately Allege Causation

4   Plaintiff's UCL claim independently fails because she has not plausibly
5   alleged facts satisfying the UCL's causation requirement. *Turner*, 859 F.3d at 1150-
6   51. Although Plaintiff identifies a host of supposed failures by Walmart employees
7   to intervene in the Cash App deposits, none of these failures caused her to make
8   these deposits. Rather, as Plaintiff alleges, her economic injury was caused by the
9   fraudster's threatening phone calls demanding that she make these Cash App
10  deposits. Compl. ¶ 105. Indeed, even when Walmart employees rejected Plaintiff's
11  transactions for exceeding the $500 limit or for using an expired barcode, Plaintiff
12  continued to forge ahead to obey the fraudster. *Id.* ¶¶ 111-12, 118.

13  Additionally, when a UCL claim rests on an alleged "misrepresentation or
14  omission," the plaintiff must demonstrate "actual reliance" on the alleged
15  "misrepresentation or omission" to satisfy the causation requirement. *Lagrisola v.*
16  *N. Am. Fin. Corp.*, 314 Cal. Rptr. 3d 941, 951-52 (Ct. App. 2023). Here, Plaintiff's
17  claims rest on "Defendants' representations and omissions about Walmart's and/or
18  Cash App's money transfer services." Compl. ¶ 135(a); *see id.* ¶¶ 171, 176
19  (referencing "acts and/or omissions"). But she does not allege that she actually
20  relied on any such representations or omissions in determining whether to undertake
21  her Cash App deposits. Put another way, Plaintiff does not allege that Walmart's
22  conduct "induced" her to undertake these Cash App deposits. *Lagrisola*, 314 Cal.
23  Rptr. 3d at 952 n.7. Rather, she alleges that the fraudster induced her to make these
24  deposits long before she set foot onto any Walmart location. Compl. ¶ 105. Because
25  Plaintiff has failed to allege that she "relied on either a representation *or* an
26  understanding created by an omission" by Walmart, she "cannot allege that such a
27  representation or omission *caused* [her] economic injury." *Lagrisola*, 314 Cal. Rptr.
28  3d at 951-52.

**C.    At A Minimum, Plaintiff Lacks Article III Standing To Obtain Injunctive Relief**

Article III of the Constitution requires a plaintiff to "demonstrate standing separately for each form of relief sought." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (citation omitted).  The plaintiff "must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by [the particular] relief [at issue]." *Id.* at 423.

Here, Plaintiff seeks injunctive relief for her CLRA and UCL claims.  *See* Compl. ¶¶ 139, 159, 166, 188.  Standing to seek "injunctive relief" cannot rest on allegations that the plaintiff "suffered injury in the past" from the allegedly unlawful conduct. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009).  Rather, "[t]o seek injunctive relief, a plaintiff must show" that she faces a "threatened injury," and "the threat must be actual and imminent, not conjectural or hypothetical." *Id.* at 492-93.  That is, the "'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

Plaintiff has failed to make the required showing.  Plaintiff asserts only that she "suffers a substantial risk of repeated injury in the future" because Walmart may "expand[] its financial service offerings while still failing to address the inadequacies." Compl. ¶ 139.  But Plaintiff's own allegations belie that conclusory and speculative assertion.  Plaintiff alleges that, before the isolated incident involving the fraudster, she "ha[d] never used financial services at Walmart before, nor is she a regular customer." *Id.* ¶ 107.  The "emotional and financial distress" she suffered "from her ordeal" making Cash App deposits at Walmart for the first time was therefore a one-off incident.  *Id.* ¶ 126.  On these allegations, there is no reason to think Plaintiff will ever use financial services offered at Walmart again, much less to deposit money again via a Cash App barcode.  And her claim of future injury also

requires further speculating that another third-party fraudster will try to take advantage of her.  This "speculative chain of possibilities" does not satisfy "the requirement that threatened injury must be certainly impending."  *Clapper*, 568 U.S. at 410; *see, e.g.*, *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 921 (C.D. Cal. 2023) (rejecting Article III standing for injunctive relief because plaintiff did not "even claim that he intends to purchase the product at issue here—or any [of defendants'] products—in the future"); *Weizman v. Talkspace, Inc.*, 2023 WL 8461173, at *4-5 (N.D. Cal. Dec. 6, 2023) (similar).

Moreover, even assuming Plaintiff were to use Walmart's financial services again, she is uniquely unlikely to suffer the same harm again given her experience. Plaintiff is now fully aware of the risks and warning signs of Cash App deposit scams.  Because Plaintiff has failed to plausibly allege that she "face[s] 'real or immediate threat that [she] will again be wronged *in a similar way*,'" she lacks Article III standing to seek injunctive relief.  *Weizman*, 2023 WL 8461173, at *5 (emphasis added) (citation omitted); *cf., e.g.*, *Jackson v. Gen. Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (customer deceived about weight of cereal box had "not shown any likelihood she will be deceived in the future" because "she now knows she can ascertain the amount of cereal she is buying by looking at the label").  Her claims for such relief must therefore be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, all claims against Walmart in Plaintiff's Complaint should be dismissed.


Dated: February 23, 2024                    Respectfully submitted,

                                            LATHAM & WATKINS LLP

                                            By */s/ Sean M. Berkowitz*
                                                Sean M. Berkowitz (*pro hac vice*)
                                                *Attorney for Defendant Walmart Inc.*


**RULE 11-6.1 CERTIFICATION**

The undersigned, counsel of record for Walmart Inc., certifies that this brief contains 6,963 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 23, 2024                    By */s/ Sean M. Berkowitz*
                                                Sean M. Berkowitz (*pro hac vice*)