Justin Owens, State Bar No. 254733
 jowens@stradlinglaw.com
Shawn Collins, State Bar No. 248294
 scollins@stradlinglaw.com
Sean Thomas Lobb, State Bar No. 324213
 stlobb@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Fax: (949) 725-4100

Attorneys for Defendant BLOCK, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RISA POTTERS, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WALMART, INC.; BLOCK, INC.; and DOES 1–10 inclusive,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-10335-WLH (MARx)<br>Hon. Wesley L. Hsu<br><br>**DEFENDANT BLOCK, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STRIKE CLASS CLAIMS; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with the Declarations of Tacara Tate, Michael Druker, and Caroline Hollis and [Proposed] Order*]<br><br>Date:　　April 26, 2024<br>Time:　　1:30 p.m.<br>Location:　First Street U.S. Courthouse<br>　　　　　Courtroom 9B<br>　　　　　350 W. 1st Street<br>　　　　　Los Angeles, CA 90012<br><br>Complaint Filed: December 8, 2023 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on April 26, 2024 at 1:30 p.m., or as

3

soon after as the matter may be heard, in Courtroom 9B of this Court, located at

4

350 W. 1st Street, Los Angeles, California, before the Honorable Wesley L.

5

Hsu, attorneys for Defendant Block, Inc. ("Block") move the Court for an order

6

compelling plaintiff Risa Potters ("Plaintiff") to arbitrate all claims in this action

7

against Block, dismissing (or, in the alternative, striking) Plaintiff's class claims,

8

and dismissing (or, in the alternative, staying) her individual claims pending the

9

outcome of such arbitration.  This motion is made following the conference of

10

counsel pursuant to L.R. 7-3, which took place on February 16, 2024, during

11

which counsel for the parties thoroughly discussed the substance and potential

12

resolution of the filed motion.

13

Block brings this Motion under the Federal Arbitration Act, 9 U.S.C. § 3.

14

The Motion is based on this Notice of Motion and Motion, the accompanying

15

Memorandum of Points and Authorities, the Declaration of Tacara Tate,

16

Declaration of Michael Druker, the Declaration of Caroline Hollis, the proposed

17

order granting the Motion, all papers and pleadings on file in this action, such

18

other evidence and argument as may be presented at or before any hearing on

19

this Motion, all other matters of which the Court may take judicial notice, and

20

any other papers submitted in support of this Motion.

21

22

Dated:  March 14, 2024

STRADLING YOCCA CARLSON & RAUTH LLP

23

24

25

By:  */s/ Justin Owens*

26

Justin Owens
Shawn Collins
Sean Thomas Lobb

27

Attorneys for Defendant BLOCK, INC.

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................8

II.   BACKGROUND ................................................................................9

    A.   Plaintiff's Federal Complaint Asserts Claims Against Block. ...9

    B.   Plaintiff Agreed To Block's Terms Of Service Multiple Times ................................................................................9

        1.   Plaintiff Agreed to "Binding Individual Arbitration" of "Any And All Disputes" When She Created Her 2015 Cash App Account And Completed One Dozen Transactions. ................................................................9

        2.   Plaintiff Agreed to "Binding Individual Arbitration" Of "Any And All Disputes" When She Created Her 2023 Cash App Account. ................................................................13

III.  LEGAL STANDARD ........................................................................15

IV.   ARGUMENT ................................................................................17

    A.   Plaintiff's Claims Against Block Are Subject To Valid And Binding Arbitration Agreements. ................................................17

        1.   Valid And Enforceable Arbitration Agreements Exist Between Plaintiff And Block. ................................................17

        2.   The Arbitrator Must Decide Whether Plaintiff's Claims Are Within The Scope Of The Arbitration Agreements. ................................................................20

        3.   In Any Event, Plaintiff's Claims Clearly Fall Within The Scope Of The Binding Arbitration Agreements ......23

    B.   Plaintiff Must Be Compelled To Arbitrate Her Claims And Those Claims Should Be Dismissed. ................................................25

        1.   Plaintiff's Class Claims Must Be Dismissed Based On the Arbitration Agreements' Class Action Waiver. .......25

        2.   The Court Should Also Dismiss Plaintiff's Individual Claims On Compelling Her To Arbitrate.  At A Minimum, Those Claims Must Be Stayed. ....................26

V.    CONCLUSION ................................................................................27

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **Cases**

4

*Arthur Andersen LLP v. Carlisle*,

5

    556 U.S. 624 (2009) ................................................................................26

6

*AT&T Techs. v. Communs. Workers of Am.*,

7

    475 U.S. 643 (1986) ................................................................................24

8

*Brennan v. Opus Bank*,

9

    796 F.3d 1125 (9th Cir. 2015) ..............................................................21

10

*Cic Buyer LLC v. Pac. Ins. Co. Ltd.*,

11

    2021 U.S. Dist. LEXIS 243573 (C.D. Cal. Sep. 15, 2021) .........................26

12

*Epic Sys. Corp. v. Lewis*,

    584 U.S. 497 (2018) ................................................................................25

13

*Galilea, LLC v. AGCS Marine Ins. Co.*,

14

    879 F.3d 1052 (9th Cir. 2018) ..............................................................22

15

*Greder v. Uber Techs., Inc.*,

16

    2018 WL 10017490 (C.D. Cal. Sept. 5, 2018)............................................21

17

*Gurule v. Airbnb, Inc.*,

18

    No. 2:23-cv-08067-CAS(JCx), 2023 U.S. Dist. LEXIS 216200

19

    (C.D. Cal. Dec. 4, 2023) ........................................................................22

20

*Hart v. Charter Communs., Inc.*,

    814 F. App'x 211 (9th Cir. 2020)............................................................19

21

*Jatinder Singh v. Payward, Inc.*,

22

    No. 23-cv-01435-CRB, 2023 U.S. Dist. LEXIS 147449

23

    (N.D. Cal. Aug. 22, 2023) ......................................................................22

24

*Johnmohammadi v. Bloomingdale's, Inc.*,

25

    755 F.3d 1072 (9th Cir. 2014)................................................................26

26

*Khan v. Orkin Exterminating Co.*,

27

    2011 WL 4853365 (N.D. Cal. Oct. 13, 2011)............................................15

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) (en banc) ........................................ 16

*LegalForce RAPC Worldwide, P.C. v. LegalZoom.com, Inc.*,
  No. 17-cv-07194-MMC, 2018 U.S. Dist. LEXIS 60986
  (N.D. Cal. Apr. 10, 2018) ................................................................ 24

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ........................................................ 16

*Maranda v. Hyundai Motor Am., Inc.*,
  2023 WL 6474450 (C.D. Cal. Oct. 2, 2023) ................................... 25

*McGrath v. DoorDash, Inc.*,
  2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) .................................. 15

*McKay v. JPMorgan Chase Bank, N.A.*,
  2016 WL 11755601 (C.D. Cal. Mar. 8, 2016) ................................ 15

*Michael Nguyen v. Okcoin USA Inc.*,
  No. 22-cv-06022-KAW, 2023 U.S. Dist. LEXIS 27449
  (N.D. Cal. Feb. 17, 2023) ................................................................ 20

*Moran v. Charter Communs., Inc.*,
  No. SACV 20-00303JVS(JDEx), 2020 U.S. Dist. LEXIS 181072
  (C.D. Cal. June 11, 2020) ................................................................ 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................ 23

*Norman v. Uber Techs., Inc.*,
  2021 WL 4497870 (N.D. Cal. Apr. 14, 2021) ................................ 21

*O'Dell v. Aya Healthcare, Inc.*,
  2023 WL 3134173 (S.D. Cal. Apr. 27, 2023) ........................... 16, 20

*Oberstein v. Live Nation Entm't, Inc.*,
  60 F.4th 505 (9th Cir. 2023) ........................................................... 17

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) ........................................................... 22

*Ragsdale v. Wilshire Com. Cap. LLC*,
  2021 WL 4699526 (C.D. Cal. Apr. 30, 2021) ................................ 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

*Rodriguez v. Best Buy Co.*,
  No. 8:23-CV-01194-DOC-KESx, 2023 U.S. Dist. LEXIS 204925
  (C.D. Cal. Nov. 14, 2023) .................................................................18

*Ruiz v. Conduent Com. Sols., LLC*,
  2023 WL 3379300 (E.D. Cal. May 11, 2023)....................................26

*Shierkatz RLLP v. Square, Inc.*,
  No. 15-cv-02202-JST, 2015 U.S. Dist. LEXIS 169628
  (N.D. Cal. Dec. 17, 2015)..................................................................22

*Surkhabi v. Tesla, Inc.*,
  No. SACV 22-1315 .............................................................................18

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011)................................................19

*Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*,
  42 F.3d 1292 (9th Cir. 1994)..............................................................23

*Villamar v. Clean Harbors Env't Servs. Inc.*,
  2022 WL 4465549 (C.D. Cal. Sept. 23, 2022)...................................26

*Wagner v. Stratton Oakmont, Inc.*,
  83 F.3d 1046 (9th Cir. 1996) ..............................................................17

*Wanless v. Peloton Interactive, Inc.*,
  No. 2:23-CV-00405-DMC, 2023 U.S. Dist. LEXIS 106234
  (E.D. Cal. June 20, 2023) ...................................................................23

*White v. Ring LLC*,
  No. CV 22-6909-JFW(PVCx), 2023 U.S. Dist. LEXIS 16427
  (C.D. Cal. Jan. 25, 2023) ...................................................................22

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017)........................................................17

**Statutes**

9 U.S.C. § 3 ...............................................................................................26

9 U.S.C. § 4 ...............................................................................................25

California Civil Code § 1761(b) ...............................................................24

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

Consumers Legal Remedies Act ................................................................9, 20, 24

Federal Arbitration Act ............................................................................... *passim*

Unfair Competition Law ........................................................................9, 20, 24

**Other Authorities**

Rule 11(a) ...........................................................................................................21

Rule 14(a) ...........................................................................................................21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3       Defendant Block, Inc. ("Block") is a technology company that creates

4   tools and services that empower its customers.  One such tool is Cash App, a

5   mobile device application that allows customers to conveniently send and

6   receive money, among other functions.  To create a Cash App account or receive

7   funds, a customer must agree to the Cash App terms of service; unless the

8   customer agrees to the terms of service, the customer cannot proceed to create

9   an account or use Cash App.  These terms of service provide for binding

10  individual arbitration of all disputes.

11       In her Complaint, Plaintiff Risa Potters ("Plaintiff") alleges that she is not

12  a Cash App user and had never heard of Cash App when she fell victim to a

13  despicable scheme in which a criminal actor impersonating a police officer used

14  lies and manipulation to persuade Plaintiff to send him $4,000.  In fact, Plaintiff

15  had actually signed up for multiple Cash App accounts—one created on

16  December 9, 2015, and another created on March 31, 2023—and engaged in

17  approximately one dozen financial transactions using Cash App.

18       Plaintiff could not have created her Cash App accounts or completed

19  transactions on those accounts without agreeing to Cash App's General Terms

20  of Service on multiple occasions.  Every applicable version of the Terms of

21  Service includes a mandatory arbitration agreement.  Because Plaintiff executed

22  valid and binding arbitration agreements with Block, and because her claims

23  against Block in this action are within the scope of those agreements, Plaintiff

24  must be compelled to arbitrate all claims against Block and her claims should be

25  dismissed.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

## II.    BACKGROUND

### A.    Plaintiff's Federal Complaint Asserts Claims Against Block.

On December 8, 2023, Plaintiff filed her Complaint in this Court.  (Dkt. No. 1.)  The Complaint alleges causes of action against Block for negligence, violation of the Consumers Legal Remedies Act ("CLRA"), and violation of the Unfair Competition Law ("UCL").  (*Id.*)

In the Complaint, Plaintiff alleges she was "scammed out of thousands of dollars, which funds were transmitted via the Cash App system" over a two-day period in March and April 2023.  (*Id.* ¶¶ 5, 122.)  The Complaint further alleges that Plaintiff had "never heard of or used Cash App" at the time she was scammed (*id.* ¶¶ 107, 114), that she "did not have a Cash App or know what Cash App is," and that she was unaware that the scammer was asking her to transfer money to a Cash App account.  (*Id.* ¶¶ 66, 122.)

Plaintiff alleges that she made several "Cash App deposits" to the scammer beginning on March 31, 2023, and that Block failed to exercise "reasonable care" to protect Plaintiff against the scammer's criminal actions. (*Id.* ¶¶ 156, 183.)

### B.    Plaintiff Agreed To Block's Terms Of Service Multiple Times.

In February 2024, as part of its ongoing review of the Complaint, Block determined that Plaintiff's allegations regarding her use of Cash App are untrue, and that Plaintiff in fact had at least two Cash App accounts at the time of the events alleged in the Complaint.  (Declaration of Tacara Tate ("Tate Decl.") ¶ 2.)  A customer cannot create a Cash App account or engage in Cash App transactions without first agreeing to the terms of service, as Plaintiff did. (Declaration of Michael Druker ("Druker Decl.") ¶ 4.)

#### 1.    <u>Plaintiff Agreed to "Binding Individual Arbitration" of "Any And All Disputes" When She Created Her 2015</u>

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

### Cash App Account And Completed One Dozen Transactions.

Block's records demonstrate that in December 2015, Plaintiff agreed to the Cash App Terms of Service when she created a Cash App account (the "2015 Account").[1]  (Druker Decl. ¶ 5.)  Specifically, on December 9, 2015, and in order to receive a payment from another Cash App user, Plaintiff received an email from Block at an email address that the payor had provided.  (*Id.*)  The email sent to Plaintiff identified the payor and the amount of the payment, and provided instructions on how to accept and deposit the payment through Cash App (then called Square Cash).  (*Id.*)  The email informed Plaintiff that: "By depositing, you agree to the Terms of Service."  (*Id.*)  The words "Terms of Service" in the email were hyperlinked to Cash App's October 27, 2015 Terms of Service, which were the ones in effect as of December 9, 2015 (the "2015 Cash App TOS").  (*Id.*; Declaration of Caroline Hollis ("Hollis Decl.") ¶ 2.)  Plaintiff followed the steps in the email to complete the transaction: she clicked on an icon labeled "Deposit Cash," set up a Cash App account that included her email address and a debit card in her name, and then received the initial payment onto that debit card.  (Druker Decl. ¶ 6.)  Plaintiff could not have set up her Cash App account in December 2015, and could not have received the initial payment, without agreeing to the 2015 Cash App TOS.  (Tate Decl. ¶ 4.)

Included within the 2015 Cash App TOS is a provision titled, "Binding Individual Arbitration."  (Hollis Decl., Ex. A § 30.)  The binding arbitration agreement in the 2015 Cash App TOS requires that "all Disputes" between

---

[1] On December 1, 2021, Square, Inc. changed its corporate name to Block, Inc. Block is the name for the company as a corporate entity.  Since its start in 2009 with the Square business, Block has added Cash App (formerly known as Square Cash), TIDAL, and TBD as businesses.

Block (then called Square) and its users to be arbitrated on an individual basis, with "Disputes" defined as "a dispute of any kind"[2]:

> **You and Square agree to arbitrate all Disputes . . . *ANY ARBITRATION UNDER THIS AGREEMENT WILL BE ONLY BE ON AN INDIVIDUAL BASIS*; CLASS ARBITRATIONS, CLASS ACTIONS, PRIVATE ATTORNEY GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED, AND YOU ARE WAIVING YOUR RIGHTS TO HAVE YOUR CASE DECIDED BY A JURY AND TO PARTICIPATE IN A CLASS ACTION AGAINST SQUARE.**

(*Id.* § 30) (emphasis added.)  This arbitration agreement was restated in the March 16, 2016 version of the Cash App terms of service, that were in effect from that date through July 10, 2016.  (Hollis Decl., Ex. C at § 13.)

The Cash App user who made the initial payment to Plaintiff in December 2015 included a descriptive "note" stating: "yoga."  (Tate Decl. ¶ 4.)  This description is consistent with the allegation in the Complaint that Plaintiff "works part time as a yoga teacher."  (Compl. ¶ 100.)  From December 2015 through April 2016, Plaintiff received seven payments from the same Cash App user, each also described as being for "yoga."  (Tate Decl. ¶ 5; *id*. at Ex. A.)

On May 27, 2016, Cash App's terms of service were updated to a new version (the "2016 Cash App TOS").  (Hollis Decl., Ex. D ("General Terms of Service" as updated on May 27, 2016, with "Additional Cash Terms of Service" dated July 11, 2016.)  The 2015 Cash App TOS also included a "Right to Amend" provision stating: "Any use of the Services after our publication of any such changes shall constitute your acceptance of this Agreement as modified."  (*Id.*, Ex. A § 33.)  Like the 2015 Cash App TOS, the binding arbitration provision in the 2016 Cash App TOS requires Plaintiff to arbitrate "any and all Disputes"[3]:

---

[2]  (*Id.* § 29.)

[3] "Disputes" are broadly defined in the 2016 Cash App TOS as including: "any claim, controversy, or dispute between you and Square, its processors, suppliers

1    ***You and Square agree to arbitrate any and all Disputes by a neutral arbitrator who has the power to award the same damages and relief***
2    ***that a court can. ANY ARBITRATION UNDER THESE GENERAL TERMS WILL ONLY BE ON AN INDIVIDUAL BASIS***; CLASS
3    ARBITRATIONS, CLASS ACTIONS, PRIVATE ATTORNEY GENERAL ACTIONS, REPRESENTATIVE ACTIONS AND
4    CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR CASE
5    DECIDED BY A JURY AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION AGAINST SQUARE. If any
6    provision of this arbitration agreement is found unenforceable, the unenforceable provision will be severed, and the remaining arbitration
7    terms will be enforced (but in no case will there be a class or representative arbitration). All Disputes will be resolved finally and
8    exclusively by ***binding individual arbitration*** with a single arbitrator administered by the American Arbitration Association
9    (https://www.adr.org) according to this Section and the applicable arbitration rules for that forum. Consumer claimants (individuals whose
10   transaction is intended for personal, family, or household use) may elect to pursue their claims in their local small-claims court rather than
11   through arbitration so long as their matter remains in small claims court and proceeds only on an individual (non-class or non-representative)
12   basis. The Federal Arbitration Act, 9 U.S.C. §§ 1-16, fully applies.

13   (*Id.* at § 21) (emphasis added.)

14        After the 2016 Cash App TOS went into effect, Plaintiff used Cash App

15   on multiple occasions to complete transactions.  In October 2016, Plaintiff

16   sought to receive a payment on a new debit card. (Tate Decl. ¶ 5; *id*. at Ex. A.)

17   In order to add the new debit card to her account, Plaintiff was prompted to

18   complete a security "challenge." (Druker Decl. ¶ 7.)  Like many apps, Cash App

19   requires its users to input multi-digit security codes received from Cash App via

20   text message or email before they can make certain changes to their account.

21   (*Id.* ¶  8.)  Plaintiff completed the security challenge on October 7, 2016 by

22   successfully inputting the security code she had been provided.  (*Id.*)  Plaintiff

23   then logged on to the Cash App website and added a new debit card, after which

24   she received payments through Cash App to the new card in November 2016

25

26   _____

27   or licensors (or their respective affiliates, agents, directors or employees),
including any claims relating in any way to these General Terms, any Additional

28   Terms, or the Services, or any other aspect of our relationship." (*Id*., Ex. D § 20.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

and January 2017.[4]  (Tate Decl. ¶ 5.)  On November 23, 2016, Plaintiff received a payment of $20.00 with descriptive note "yogax2".  (*Id.*, Ex. A)  On January 4, 2017, Plaintiff received a payment of $10.00 with descriptive note "yoga 1/4".  (*Id.*)  And on January 8, 2017, Plaintiff fulfilled a $30.00 payment "request" from the same Cash App user who made the payments to Plaintiff in 2015, 2016 and 2017.[5]  (*Id.* ¶ 6.)  Notably, in order to complete the "request" transaction initiated by another Cash App user on January 8, 2017, Plaintiff was required to verify her identity to Cash App, which she did on January 9, 2017.  (*Id.*)  The 2016 Cash App TOS were effective on the dates of each of these transactions from October 2016 through January 2017.  (Hollis Decl. ¶ 5.)

Plaintiff never closed her 2015 Account, and it remains open to this day.  (Tate Decl. ¶ 8.)

### 2. **Plaintiff Agreed to "Binding Individual Arbitration" Of "Any And All Disputes" When She Created Her 2023 Cash App Account.**

In addition to her 2015 Account, Block's records show that on March 31, 2023—the same date that Plaintiff alleges she was contacted by the criminal scammer—Plaintiff created another Cash App account (the "2023 Account").  (*Id.* ¶ 9.)  After installing the application on her iPad, Plaintiff was directed to type in her phone number to begin the account creation process.  (Druker Decl. ¶ 10.)  Plaintiff was then directed to verify her phone number.  (*Id.* ¶ 11.)  Plaintiff was then required to complete a security challenge and Block's server sent

---

[4] As of the November 2016 and January 2017 transactions, the 2016 Cash App TOS were still in effect as supplemented by the November 7, 2016 "Additional Cash Terms of Service". (Hollis Decl., Ex. F.)

[5] The "subject" for the payment request from the other Cash App user was "fraudulent account."  This subject was generated by the Cash App user who requested payment, and the reason for this subject is unknown.

Plaintiff a text message containing a one-time verification code with the following message: "Cash App: [verification code] is your sign-in code. By entering, you agree to the Terms, E-Sign consent, and Privacy Policy: https://cash.app/legal/tos." (*Id*.) The hyperlink contained in the security challenge text message directed Plaintiff to the Cash App terms of service dated March 31, 2023 (the "2023 Cash App TOS"). (*Id*. ¶ 12.) Plaintiff entered the verification code and submitted it through the app to Block's server, enabling her to proceed with creating the 2023 Account. (*Id*. ¶ 13.) By submitting the verification code, Plaintiff agreed to the 2023 Cash App TOS. (*Id.* ¶ 14.) If Plaintiff had not submitted the verification code and agreed to the 2023 Cash App TOS, she would not have been able to create or utilize her Cash App account. (*Id.*)

The introduction to the 2023 Cash App TOS expressly references the binding arbitration provision contained therein:

> These Cash App Terms of Service (the "Cash App Terms") are a legal agreement between you, as a current or prospective user of the Services, and Block, Inc., formerly known as "Square, Inc." (hereafter, "Block," "we," "our" or "us"), and governs your use of Cash App, a financial platform, which includes mobile applications, websites, software, cloud-based solutions, and other products and features (the "Service"), offered by Block . . . By using the Service you agree to be bound by these Cash App Terms and any policies referenced within ("Policies") . . .
>
> Please note that you should review all Cash App Terms carefully, including those provisions which limit our liability (see Section XI.16) and those ***regarding individual arbitration for potential legal disputes*** (see Sections XI.18 and XI.19).

(Hollis Decl., Ex. G ("2023 Cash App TOS") at 1-2.) (emphasis added.)

The 2023 Cash App TOS include a section titled, "Binding Arbitration" which—like the arbitration agreements in earlier versions of the Terms of

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1  Service that Plaintiff consented to—requires that "any and all Disputes" be

2  arbitrated,[6] and requires such arbitrations to proceed solely on an individual

3  basis:

> You and Block agree that any and all Disputes, except those that are
> resolved informally or brought in a small claims court, will be arbitrated
> by a neutral arbitrator who has the power to award the same individual
> damages and individual relief that a court can . . . If we are not able to
> resolve the Dispute by informal negotiation or, as provided below, in a
> small claims court, all Disputes will be resolved finally and exclusively
> by **binding individual arbitration** with a single arbitrator (the
> "Arbitrator") administered by the American Arbitration Association
> (https://www.adr.org) according to this Section and the Consumer
> Arbitration Rules . . . .

10  (*Id.* § 19.)

11       On March 31, 2023—the same date that Plaintiff alleges she was first

12  contacted by the scammer (Compl. ¶ 101)—Plaintiff attempted to send $500.00

13  with her 2023 Account, but the transaction was declined by Cash App.  (Tate

14  Decl. ¶ 11.)  Plaintiff then made three separate attempts on March 31 and April

15  1, 2023 to load $200 to her 2023 Account, but each attempt was again declined

16  by the Cash App system.  (*Id.* ¶¶ 11-12.)

17  **III.  LEGAL STANDARD**

18       Under the Federal Arbitration Act ("FAA"),[7] "[a] party to a valid

19  arbitration agreement may 'petition any United States district court for an order

20

21  [6] The 2023 Cash App TOS defines "Disputes" as including: "any claim,
22  controversy, or dispute between you and Block, its processors, suppliers or
   licensors (or their respective affiliates, agents, directors or employees), whether
   arising before or during the effective period of these Terms, and including any
23  claim, controversy, or dispute based on any conduct of you or Block that
   occurred before the effective date of these Terms, including any claims relating
24  in any way to these Terms or the Services, or any other aspect of our
   relationship."  (*Id.* § 18.)

25  [7] Each version of the Cash App Terms of Service agreed to by Plaintiff states
26  that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 "fully applies."  (Hollis Decl.,
   Ex. A § 30, Ex. D § 19; Ex. G § 19.)  This demonstrates that the the FAA
   governs here. *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *5 (N.D. Cal.
27  Nov. 5, 2020) (collecting cases); *McKay v. JPMorgan Chase Bank, N.A.*, 2016
   WL 11755601, at *3 (C.D. Cal. Mar. 8, 2016); *Khan v. Orkin Exterminating
28  *Co.*, 2011 WL 4853365, at *3 (N.D. Cal. Oct. 13, 2011).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-
DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1   directing that such arbitration proceed in the manner provided for in such

2   agreement.'" *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010,

3   1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4).  The Ninth Circuit has noted that

4   "[a]rbitration provides a forum for resolving disputes more expeditiously and

5   with greater flexibility than litigation." *Id.* at 1011.  "Arbitration is a matter of

6   contract." *Id.* at 1011-12 (citation omitted).  "Congress crafted the FAA to

7   'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate

8   and place such agreements upon the same footing as other contracts.'" *Id.* at

9   1012 (citation omitted).

10          The Supreme Court has "given broad effect to arbitration agreements."

11  *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc)

12  (citations omitted).  The Supreme Court has described the FAA "as reflecting

13  both a 'liberal federal policy favoring arbitration,' and the 'fundamental

14  principle that arbitration is a matter of contract[.]'" *Concepcion*, 563 U.S. at

15  339 (citations omitted).  "In line with these principles, courts must place

16  arbitration agreements on an equal footing with other contracts, and enforce

17  them according to their terms[.]" *Id.* (citations omitted).  If the contracting

18  parties have agreed to arbitrate arbitrability, as they have here, the arbitrator

19  must decide disputes relating to the interpretation or enforceability of the

20  agreement. *See, e.g.*, *O'Dell v. Aya Healthcare, Inc.*, 2023 WL 3134173, at *6

21  (S.D. Cal. Apr. 27, 2023) (holding arbitration agreement clearly and

22  unmistakably delegated arbitrability to arbitrator where it authorized the

23  arbitrator to decide "'disputes relating to the interpretation or enforceability'" of

24  the agreement).

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-
DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

## IV.  ARGUMENT

### A.    Plaintiff's Claims Against Block Are Subject To Valid And Binding Arbitration Agreements.[8]

#### 1.    <u>Valid And Enforceable Arbitration Agreements Exist Between Plaintiff And Block</u>.

Plaintiff and Block entered into valid and enforceable agreements to arbitrate disputes between them, both in connection with Plaintiffs' 2015 Account and her 2023 Account.

To determine whether an arbitration agreement is valid, the court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  A user of a computer program or application can manifest consent to terms of service by creating an account, and also by electronically acknowledging their agreement to the terms of service.  *See Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (finding that plaintiff agreed to arbitration by clicking button agreeing to hyperlinked arbitration agreement to complete online purchase); *see also Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023) (affirming order compelling

---

[8] While Plaintiff Risa Potters is the only named plaintiff and the instant Motion is limited to compelling arbitration of her claims, Block expressly reserves the right to compel arbitration of claims asserted by other class members (putative or otherwise) if they are identified in the future.  Indeed, the class definition proposed in the Complaint consists of individuals who had a "Cash App account" at the time of their alleged loss, and had thus consented to binding individual arbitration just as Plaintiff did.  (Compl. ¶ 128 (proposing nationwide and California subclasses of all individuals who made certain "deposits into a Cash App account(s) ***other than their own Cash App account***.") (emphasis added).)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   arbitration where user clicked a "Sign In" button above language stating, "By

2   continuing past this page, you agree to the Terms of Use"); *Rodriguez v. Best*

3   *Buy Co.*, No. 8:23-CV-01194-DOC-KESx, 2023 U.S. Dist. LEXIS 204925, at

4   *9 (C.D. Cal. Nov. 14, 2023) (compelling arbitration where defendant's website

5   "gave Plaintiff reasonably conspicuous notice of the arbitration agreements");

6   *Surkhabi v. Tesla, Inc.*, No. SACV 22-1315 JVS (DFMx), 2022 U.S. Dist.

7   LEXIS 198699, at *8 (C.D. Cal. Oct. 27, 2022) (compelling arbitration where

8   plaintiff "had sufficient opportunity to see and review the arbitration agreement"

9   on defendant's website, even though plaintiff alleged he did not review the

10   agreement).

11        Here, Plaintiff entered into multiple binding agreements with Block to

12   arbitrate any and all disputes between the parties.

13        <u>The 2015 Arbitration Agreement</u>: Plaintiff consented to the 2015 Cash

14   App TOS by creating her 2015 Account, at which time she electronically

15   acknowledged her agreement to the TOS. (*See* Sec. II.B.1, *supra*.) Plaintiff

16   subsequently engaged in a series of transactions that allowed her to receive

17   multiple payments while the 2015 Cash App TOS was in effect. (*Id.*) The 2015

18   Cash App TOS includes a binding arbitration agreement that requires Plaintiff to

19   "arbitrate all Disputes…ON AN INDIVIDUAL BASIS." (Hollis Decl., Ex. A §

20   30.)

21        <u>2016 Arbitration Agreement</u>: Plaintiff assented to the 2016 Cash App

22   TOS, effective as of May 2016, when she received payments to her Cash App

23   account in October 2016, November 2016, and January 2017. (*See* Sec. II.B.1,

24   *supra*.) In addition, on January 8, 2017 Plaintiff fulfilled a "request" to pay

25   $30.00 to another Cash App user, and verified her identity in connection with

26   that transaction. (*Id.*) The 2015 Cash App TOS expressly provides that ongoing

27   use of the services constitutes assent to the terms of service in effect at the time:

28   "Any use of the Services after our publication of any such changes shall

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

constitute your acceptance of this Agreement as modified." (Hollis Decl., Ex. A § 30.) It is well-established that "continued acceptance" provisions like this one are enforceable. *See e.g.*, *Hart v. Charter Communs., Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) (holding that plaintiff was bound to arbitration clause where plaintiff's "continued acceptance of TWC's services constituted assent to the agreement"); *Moran v. Charter Communs., Inc.*, No. SACV 20-00303JVS(JDEx), 2020 U.S. Dist. LEXIS 181072, at *15 (C.D. Cal. June 11, 2020) (compelling arbitration where plaintiff "continued to use Charter's services and did not opt out of the arbitration agreement"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (enforcing arbitration agreement where "as a result of Plaintiff's assent to the YoVille TOS, which stated that the terms could be changed and continued use constituted acceptance, Plaintiff thereafter accepted and became bound by the Universal TOS, which governs"). By continuing to use the Cash App services after the terms of service changed in May 2016, Plaintiff thereby consented to the 2016 Cash App TOS. (Tate Decl., ¶¶ 5-6.)

By consenting to the 2016 Cash App TOS Plaintiff agreed, once again, that: "All Disputes will be resolved finally and exclusively by ***binding individual arbitration with a single arbitrator.***" (Hollis Decl. Ex. D § 21.)

<u>2023 Arbitration Agreement</u>: When Plaintiff created a second Cash App account on March 31, 2023, she again accepted the Cash App Terms of Service, including the binding individual arbitration agreement. When Plaintiff created her 2023 Account, she was expressly notified that by entering and submitting the verification code, and proceeding with the creation of a Cash App account, she was agreeing to the 2023 Cash App TOS. (*See* Sec. II.B.3, *supra*.) Plaintiff took affirmative action by entering the verification code required to create her 2023 Account. (Druker Decl. ¶ 13.) In doing so, Plaintiff was given notice that to use the Cash App services, she must agree to the 2023 Cash App TOS, which

-19-

were provided to her.  (*Id.* ¶ 14 .)  The 2023 Cash App TOS required Plaintiff to agree that: "all Disputes will be resolved finally and exclusively by ***binding individual arbitration*** with a single arbitrator."  (Hollis Decl., Ex. G § 19.)

\* \* \* \* \* \*

Plaintiff's actions demonstrate her consent to the arbitration agreements contained in the 2015, 2016, and 2023 versions of Cash App's Terms of Service, and establish the existence of valid and binding arbitration agreements between Plaintiff and Block.  *See e.g.*, *Michael Nguyen v. Okcoin USA Inc.*, No. 22-cv-06022-KAW, 2023 U.S. Dist. LEXIS 27449, at \*3-4 (N.D. Cal. Feb. 17, 2023) (compelling case with negligence, UCL, and CLRA claims to arbitration where plaintiff "was required to agree to Defendant's Terms of Service ('TOS') to open his account").

### 2.     The Arbitrator Must Decide Whether Plaintiff's Claims Are Within The Scope Of The Arbitration Agreements.

To the extent Plaintiff contends that her claims do not fall within the scope of the parties' valid arbitration agreements, Plaintiff has already agreed to delegate the arbitrability question to the arbitrator.  This is so for two independent reasons.

First, the arbitration agreement in the 2023 TOS expressly delegates arbitrability issues.  This agreement includes a clause that makes clear "the Arbitrator shall be responsible for determining all threshold arbitrability issues, including issues relating to whether the Cash App Terms (or any aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel."  (Hollis Decl., Exh. G § 19.) Courts have repeatedly concluded this type of language alone suffices to clearly and unmistakably delegate arbitrability to the arbitrator.  *See, e.g.*, *O'Dell v. Aya Healthcare, Inc.*, 2023 WL 3134173, at \*6 (S.D. Cal. Apr. 27, 2023) (holding arbitration agreement clearly and unmistakably delegated arbitrability to

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

arbitrator where it authorized the arbitrator to decide "'disputes relating to the interpretation or enforceability'" of the agreement); *Greder v. Uber Techs., Inc.*, 2018 WL 10017490, at *4 (C.D. Cal. Sept. 5, 2018) (holding arbitration agreement clearly and unmistakably delegated arbitrability to the arbitrator where it authorized the arbitrator to determine "'all threshold arbitrability issues'"); *Norman v. Uber Techs., Inc.*, 2021 WL 4497870, at *2 (N.D. Cal. Apr. 14, 2021) (holding arbitration agreement clearly and unmistakably delegated arbitrability to arbitrator where it authorized the arbitrator to resolve disputes "'relating to the . . . enforceability'" of the agreement and to determine "'all threshold arbitrability issues'").

Second, the arbitration agreements in the 2015, 2016, and 2023 Cash App TOS delegate all arbitrability issues to the arbitrator by incorporating by reference the arbitration rules of the American Arbitration Association ("AAA"), JAMS rules, or (in the case of the 2015 Cash App TOS) allowing a choice between either of those rules with those rules vesting the arbitrator with the authority to decide arbitrability.  *See* AAA Consumer Arbitration Rules, Rule 14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(a) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").

It is well-established that "incorporation of the [AAA] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

(holding that "incorporation of the [AAA] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *see, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.,* 879 F.3d 1052, 1061 (9th Cir. 2018). Likewise, "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick v. Running Warehouse, LLC,* 93 F.4th 468, 481 (9th Cir. 2024); *see, e.g.*, *Jatinder Singh v. Payward, Inc.*, No. 23-cv-01435-CRB, 2023 U.S. Dist. LEXIS 147449, at *17-19 (N.D. Cal. Aug. 22, 2023) (holding that parties agreed to delegate issue of arbitrability to arbitrator where TOS incorporated JAMS rules into arbitration agreement); *White v. Ring LLC*, No. CV 22-6909-JFW(PVCx), 2023 U.S. Dist. LEXIS 16427, at *20 (C.D. Cal. Jan. 25, 2023) (same). In fact, another federal district court analyzing a Block arbitration agreement that—like the 2015 and 2016 Cash App TOS—referenced both the AAA and JAMS rules, ruled that: "Because…both the applicable AAA and JAMS rules provide that the arbitrator shall decide arbitrability, the Court concludes that the incorporation of the AAA or JAMS rules 'constitutes clear and unmistakable evidence that [the] parties agreed to arbitrate arbitrability.'" *Shierkatz RLLP v. Square, Inc.*, No. 15-cv-02202-JST, 2015 U.S. Dist. LEXIS 169628, at *15-17 (N.D. Cal. Dec. 17, 2015).

Thus, under each of the relevant arbitration agreements it is the arbitrator who must determine all issues of arbitrability, including whether Plaintiff's claims are within the scope of the arbitration agreements. *See e.g.*, *Shierkatz RLLP*, 2015 U.S. Dist. LEXIS 169628, at *35-36 (analyzing Block's Terms Of Service and holding that "the parties clearly and unmistakably agreed to arbitrate the threshold issue of arbitrability"); *See e.g.*, *Gurule v. Airbnb, Inc.*, No. 2:23-cv-08067-CAS(JCx), 2023 U.S. Dist. LEXIS 216200, at *8 (C.D. Cal. Dec. 4, 2023) ("whether plaintiffs claim falls within the scope of the arbitration provision should be resolved by arbitration pursuant to the delegation provision

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1  of the arbitration clause . . . Plaintiff assented to the terms of Airbnb's TOS

2  when he created his account"); *Wanless v. Peloton Interactive, Inc.*, No. 2:23-

3  CV-00405-DMC, 2023 U.S. Dist. LEXIS 106234, at *21 (E.D. Cal. June 20,

4  2023) (compelling case to arbitration based "on the language of the delegation

5  provision in the Agreement").

6        **3.**      **<u>In Any Event, Plaintiff's Claims Clearly Fall Within The</u>**

7                       **<u>Scope Of The Binding Arbitration Agreements</u>**.

8        Even if this Court concludes it, rather than the arbitrator, must decide

9  whether the arbitration agreements encompass the dispute here, there can be no

10  doubt that the claims in Plaintiff's Complaint fall squarely within the scope of

11  the arbitration agreements she agreed to.

12        "[T]he scope of the arbitration clause is governed by federal law." *Tracer*

13  *Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).  The

14  FAA "establishes that, as a matter of federal law, any doubts concerning the

15  scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses*

16  *H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

17  Plaintiff's claims unquestionably fall within the scope of the arbitration

18  agreements here.

19        As set forth above, each applicable version of the Cash App Terms of

20  Service provides for arbitration of "all Disputes" between Block and Plaintiff,

21  with "Disputes" broadly defined to include "any dispute" (*see* Hollis Decl., Ex.

22  A (2015 Cash App TOS) §§ 29-30, Ex. D. (2016 Cash App TOS) §§ 20-21), or

23  "any claim, controversy, or dispute between you and Block . . . whether arising

24  before or during the effective period of these Terms, and including any claim,

25  controversy, or dispute based on any conduct of you or Block that occurred

26  before the effective date of these Terms."  (Hollis Decl., Ex. G (2023 Cash App

27  TOS) § 18.)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-
DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1    Here, Plaintiff alleges that her claims against Block for negligence,

2    violation of the CLRA, and violation of the UCL arise from "Cash App

3    deposits" and the "financial money transfer services offered by Walmart and

4    Cash App, including Cash App deposits," which are collectively defined in the

5    Complaint as the "Services."  (*See* Compl. ¶ 3; *id*. at n.1.)  Indeed, each claim in

6    the Complaint as asserted against Block arises from alleged conduct related to

7    Cash App services. (Compl. ¶ 156 (asserting violation of CLRA based on

8    allegation that, "[t]he Cash App deposits that Plaintiff made…are 'services'

9    within the meaning of California Civil Code § 1761(b)"); *id* at ¶ 167 (asserting

10   violation of UCL based on allegation that, "Defendant Cash App engaged in the

11   business act and/or practice of facilitating Cash App deposits through their

12   platform"); *id*. at ¶ 184 (alleging that Defendants acted negligently and caused

13   "the damages alleged herein, namely the loss of monies via Cash App

14   deposits.")

15       Plaintiff's claims against Block relate to the Cash App services and are

16   therefore subject to the broad arbitration provision contained in the 2015 Cash

17   App TOS, the 2016 Cash App TOS, and the 2023 Cash App TOS.  *See e.g.,*

18   *AT&T Techs. v. Communs. Workers of Am.,* 475 U.S. 643, 653 (1986) ("[W]here

19   the contract contains an arbitration clause, there is a presumption of arbitrability

20   in the sense that an order to arbitrate the particular grievance should not be

21   denied unless it may be said with positive assurance that the arbitration clause is

22   not susceptible of an interpretation that covers the asserted dispute");

23   *LegalForce RAPC Worldwide, P.C. v. LegalZoom.com, Inc.*, No. 17-cv-07194-

24   MMC, 2018 U.S. Dist. LEXIS 60986, at *12 (N.D. Cal. Apr. 10, 2018) (holding

25   that plaintiff's claims against defendant were "in their entirety, covered by the

26   [scope of the] arbitration agreement").

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

**B.      Plaintiff Must Be Compelled To Arbitrate Her Claims And Those Claims Should Be Dismissed.**

**1.      Plaintiff's Class Claims Must Be Dismissed Based On the Arbitration Agreements' Class Action Waiver.**

As set forth above, Plaintiff repeatedly agreed to arbitrate any and all disputes relating to the Cash App services, and the claims in her Complaint fall squarely within the scope of those agreements.  The entirety of Plaintiff's Complaint must therefore be submitted to binding arbitration in accordance with the FAA and the parties' agreements.  *See* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement").

Moreover, Plaintiff's class claims must be dismissed or stricken pursuant to the arbitration agreements.  Those agreements in the 2015, 2016, and 2023 Cash App TOS each include a class action waiver requiring Plaintiffs' disputes to be resolved solely through individual arbitration and prohibiting Plaintiff from proceeding with a class action. (*See* Hollis Decl., Ex. A (2015 Cash App TOS) § 30, Ex. D. (2016 Cash App TOS) § 21, and Ex. G (2023 Cash App TOS) § 19.)

Where, as here, an arbitration provision "specif[ies] the rules that would govern the[] arbitration[]" and, in doing so, provides for "individualized rather than class or collective action procedures," the FAA requires the enforcement of this class-action waiver "pretty absolutely." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Thus, "[c]lass action waivers are enforceable under the FAA" and require a court to compel a plaintiff to "arbitrate their claims on an individual basis." *Maranda v. Hyundai Motor Am., Inc.*, 2023 WL 6474450, at *10 (C.D. Cal. Oct. 2, 2023). Under such class action waivers, "class claims must be dismissed" or stricken. *Ragsdale v. Wilshire Com. Cap. LLC*, 2021 WL

-25-

4699526, at *4 (C.D. Cal. Apr. 30, 2021); *accord, e.g.*, *Ruiz v. Conduent Com. Sols., LLC*, 2023 WL 3379300, at *12 (E.D. Cal. May 11, 2023) (explaining that, to "give effect" to a class-action waiver in an arbitration provision, court should "dismiss all of [the plaintiff's] class claims"); *Villamar v. Clean Harbors Env't Servs. Inc.*, 2022 WL 4465549, at *3 (C.D. Cal. Sept. 23, 2022) (concluding that, where an arbitration provision includes a class-action waiver, the "class action claims must be dismissed in their entirety"). Pursuant to the class action waiver, the Court should therefore compel Potters to arbitrate solely on an individual basis and dismiss or striker her class claims.

**2.    The Court Should Also Dismiss Plaintiff's Individual Claims On Compelling Her To Arbitrate. At A Minimum, Those Claims Must Be Stayed.**

In addition to dismissing or striking Plaintiff's claims based on the class action waiver, the Court should also dismiss her remaining individual claims upon compelling her to arbitrate. S*ee Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072, 1073-74 (9th Cir. 2014) ("notwithstanding the language of [9 U.S.C. § 3], a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration"); *Cic Buyer LLC v. Pac. Ins. Co. Ltd.*, 2021 U.S. Dist. LEXIS 243573, at *11 (C.D. Cal. Sep. 15, 2021) (dismissing case where all claims were subject to arbitration).

At a minimum, the Court should stay those individual claims if it does not dismiss them. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625 (2009) (holding that 9 U.S.C. § 3 "entitles litigants in federal court to a stay of any action that is "referable to arbitration under an agreement in writing'").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-26-

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION

4871-0215-2102v7/107722-0004

## V.    CONCLUSION

For the reasons stated here, Block respectfully requests that the Court compel arbitration and dismiss this case in favor of arbitration and in accordance with the FAA and the agreements between the parties.


Dated:  March 14, 2024                    STRADLING YOCCA CARLSON &
                                          RAUTH LLP


                                          By:   */s/ Justin Owens*_____
                                                Justin Owens
                                                Shawn Collins
                                                Sean Thomas Lobb
                                          Attorneys for Defendant BLOCK, INC.

DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
4871-0215-2102v7/107722-0004

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendant Block, Inc., certifies

3  that this brief contains 6,072 words, which:

4      ☒ complies with the word limit of L.R. 11-6.1.

5      ☐ complies with the word limit set by court order dated _____.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4871-0215-2102v7/107722-0004