HORVITZ & LEVY LLP
  Jeremy B. Rosen (Bar No. 192473)
    *jrosen@horvitzlevy.com*
  505 Sansome Street, Suite 1550
  San Francisco, California 94111
  Telephone: +1.415.462.5600

  Jasjaap S. Sidhu (Bar No. 335862)
    *jsidhu@horvitzlevy.com*
  3601 West Olive Avenue, 8th Floor
  Burbank, California 91505
  Telephone: +1.818.995.0800

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
    *sean.berkowitz@lw.com*
  330 North Wabash Avenue, Suite 2800
  Chicago, Illinois 60611
  Telephone: +1.312.876.7700

  Roman Martinez (*pro hac vice*)
    *roman.martinez@lw.com*
  Drew R. Wisniewski (*pro hac vice*)
    *drew.wisniewski@lw.com*
  Blake E. Stafford (*pro hac vice*)
    *blake.stafford@lw.com*
  Joseph E. Sitzmann (*pro hac vice*)
    *joseph.sitzmann@lw.com*
  555 Eleventh Street, NW, Suite 1000
  Washington, D.C. 20004-1304
  Telephone: +1.202.637.2200

*Attorneys for Defendant Walmart Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RISA POTTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC.; BLOCK, INC.; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. 2:23-cv-10335-WLH-MAR<br><br>**DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STRIKE CLASS CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Wesley L. Hsu<br>Date: April 26, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 9B |

**<u>NOTICE OF DEFENDANT WALMART INC.'S JOINDER</u>**

**<u>IN DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION</u>**

**<u>AND TO DISMISS OR STRIKE CLASS CLAIMS</u>**

**TO THE COURT AND TO PLAINTIFF AND HER ATTORNEYS:**

**PLEASE TAKE NOTICE** that on April 26, 2024 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of this Court, located at 350 W. 1st Street, Los Angeles, California, 90012, before the Honorable Wesley J. Hsu, Defendant Walmart Inc. ("Walmart") will and hereby does join in Defendant Block, Inc.'s ("Block") motion for an order compelling Plaintiff Risa Potters ("Plaintiff") to individually arbitrate all her claims asserted in this action, dismissing (or, in the alternative, striking) Plaintiff's class claims, and dismissing her individual claims (or, in the alternative, staying those individual claims pending the outcome of such arbitration).[*]

Walmart joins in and incorporates by reference all arguments that Block makes in its motion to compel arbitration. *See* ECF No. 48. Walmart's joinder is made on the grounds asserted in Block's motion to compel arbitration, and the other grounds for compelling arbitration included in Walmart's memorandum of points

---

[*] Although Walmart has filed a motion to dismiss Plaintiff's claims and a motion to strike Plaintiff's money-transfer allegations, Walmart expressly reserved its right to compel arbitration as to Plaintiff's claims. *See* ECF No. 42 at 3 n.*; ECF No. 44 at 2 n.*. Moreover, Walmart continues to reserve all rights to enforce applicable contractual dispute resolution procedures against unnamed putative class members. Walmart does not yet know whether contractual dispute resolution procedures, including arbitration, may apply to other, unnamed putative class members. Until and unless a class is certified here, unnamed putative class members are not parties, or subject to this Court's jurisdiction, and therefore cannot be the subject of a motion to compel arbitration. Walmart reserves all rights to enforce any applicable contractual dispute resolution procedures, including the right to compel arbitration, against any unnamed putative class members, either when they join this lawsuit individually or in the event a class is certified. Walmart does not waive its rights to enforce its contractual dispute resolution procedures against unnamed putative class members, including its right to compel arbitration where appropriate, by moving to dismiss Plaintiff's claims and strike her money-transfer allegations, or by joining in Block's motion to compel arbitration against only Plaintiff at this stage.

2

DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT BLOCK, INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STRIKE CLASS CLAIMS
Case No. 2:23-cv-10335-WLH-MAR

1   and authorities, which explains why Plaintiff must likewise be compelled to
2   individually arbitrate her claims against Walmart.

3   This joinder in Block's motion is made following the conference of counsel
4   pursuant to Local Rule 7-3.  Block's counsel conferred with Plaintiff's counsel on
5   February 16, 2024.   During that conference, Plaintiff's counsel disagreed that
6   Plaintiff is required to arbitrate her claims against Walmart and Block.  Plaintiff's
7   opposition, as expressed to Block's counsel, applies equally to Walmart's request
8   for arbitration.  *See CYBERsitter, LLC v. People's Republic of China*, 2010 WL
9   4909958, at *1 n.1 (C.D. Cal. Nov. 18, 2010) (noting that Local Rule 7-3 governing
10  the conference of counsel does not apply to joinders); *Ho v. Nationstar Mortg., LLC*,
11  2020 WL 12688082, at *2 (C.D. Cal. July 31, 2020) (same).  But to be safe, counsel
12  for Walmart also emailed Plaintiff's counsel the same day and asked whether
13  Plaintiff would consent to the filing of a motion to compel arbitration.  On February
14  17, 2024, Plaintiff's counsel confirmed that Plaintiff would not consent to the filing
15  of a motion to compel arbitration.

16

17  Dated: March 21, 2024                     Respectfully submitted,

18                                            LATHAM & WATKINS LLP

19                                            By  */s/ Sean M. Berkowitz*
20                                                Sean M. Berkowitz *(pro hac vice)*
                                                  *Attorney for Defendant Walmart Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................9

SUPPLEMENTAL BACKGROUND.................................................................... 10

ARGUMENT....................................................................................................... 11

I.  WALMART'S ABILITY TO ENFORCE THE ARBITRATION AGREEMENTS BETWEEN BLOCK AND PLAINTIFF IS A QUESTION FOR THE ARBITRATOR TO DECIDE................................ 11

    A.  The Arbitration Agreements Between Block And Plaintiff Clearly And Unmistakably Delegate Threshold Issues Of Arbitrability To The Arbitrator .............................................. 11

    B.  Walmart Can Enforce The Delegation Clauses As A Nonsignatory...................................................................... 16

II.  IF THIS COURT CONCLUDES IT MUST DECIDE ARBITRABILITY, WALMART MAY ENFORCE THE ARBITRATION AGREEMENTS BETWEEN BLOCK AND PLAINTIFF .................................................................................. 18

    A.  Walmart Can Enforce The Arbitration Agreements Because Walmart Is A Third-Party Beneficiary Of Those Agreements .................................................................... 18

    B.  The Arbitration Agreements Cover Plaintiff's Claims Against Walmart ................................................................. 22

III.  THE COURT SHOULD DISMISS (OR STRIKE) THE CLASS CLAIMS AND DISMISS (OR STAY) PLAINTIFF'S INDIVIDUAL CLAIMS ............................................................ 24

CONCLUSION.................................................................................................... 25

DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT
BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STRIKE CLASS CLAIMS
Case No. 2:23-cv-10335-WLH-MAR

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Alvarez v. Progress Fin. Co.*,
  2014 WL 12605643 (C.D. Cal. May 15, 2014)..................................................14

6

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ...........................................................................................18

7

8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...........................................................................................11

9

10

*AT&T Techs. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ....................................................................................23, 24

11

12

*Becker v. Delek US Energy, Inc.*,
  39 F.4th 351 (6th Cir. 2022) .............................................................................12

13

14

*Bernstein v. PayReel, Inc.*,
  2023 WL 5505872 (C.D. Cal. July 5, 2023) ......................................................9

15

16

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)..............................................................12, 14, 15

17

18

*Bunker Hill Park Ltd. v. U.S. Bank Nat'l Ass'n*,
  180 Cal. Rptr. 3d 714 (Ct. App. 2014) ..............................................................19

19

20

*Caremark, LLC, v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022)............................................................................22

21

22

*Casiano-Bel Air Homeowners Ass'n v. Philadelphia Indem. Ins.*,
  2017 WL 3273654 (C.D. Cal. Feb. 22, 2017) ...................................................23

23

24

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)...........................................................................11

25

26

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009)....................................................................23, 24

27

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
  756 F.3d 1098 (8th Cir. 2014)...........................................................................17

28

5

DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT
BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STRIKE CLASS CLAIMS
Case No. 2:23-cv-10335-WLH-MAR

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ........................................................................................ 11

*Gold v. Illumina, Inc.*,
   2023 WL 4830126 (N.D. Cal. July 27, 2023) ................................... 21, 22

*Greder v. Uber Techs., Inc.*,
   2018 WL 10017490 (C.D. Cal. Sept. 5, 2018) .................................... 13

*Hajibekyan v. BMW of North America, LLC*,
   839 F. App'x 187 (9th Cir. 2021) ........................................................... 21

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ............................................................................... 12

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*,
   196 Cal. Rptr. 3d 237 (Ct. App. 2015) ............................................... 18

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) ................................................................................... 11

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................. 18

*Lamps Plus, Inc., v. Varela*,
   139 S. Ct. 1407 (2019) ........................................................................... 11

*Miller v. Time Warner Cable Inc.*,
   2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) .................................... 14

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................. 12

*Ngo v. BMW of N. Am., LLC*,
   23 F.4th 942 (9th Cir. 2022) ..................................................... 19, 21, 22

*Norman v. Uber Techs., Inc.*,
   2021 WL 4497870 (N.D. Cal. Apr. 14, 2021) .................................... 13

*O'Dell v. Aya Healthcare, Inc.*,
   2023 WL 3134173 (S.D. Cal. Apr. 27, 2023) .................................... 13

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ................................................................. 14

DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT
BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STRIKE CLASS CLAIMS
Case No. 2:23-cv-10335-WLH-MAR

*Pearl v. Coinbase Glob., Inc.*,
2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ........................................................ 12

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
862 F.3d 981 (9th Cir. 2017) ............................................................. 12, 16, 17

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........................................................................... 12

*Ronay Family Ltd. P'ship v. Tweed*,
157 Cal. Rptr. 3d 680 (Ct. App. 2013) .............................................. 18

*Sauer v. Experian Info. Sols., Inc.*,
2022 WL 2163016 (C.D. Cal. May 12, 2022) ........................... 12, 17, 19

*Shierkatz RLLP v. Square, Inc.*,
2015 WL 9258082 (N.D. Cal. Dec. 17, 2015) ................................. 16

*Shihinski v. Wells Fargo, N.A.*,
2023 WL 8099330 (D.N.J. Oct. 23, 2023), *report and
recommendation adopted*, 2023 WL 8091017 (D.N.J. Nov. 21,
2023) ............................................................................................. 16

*Swiger v. Rosette*,
989 F.3d 501 (6th Cir. 2021) ........................................................ 12, 17

*Symonds v. Credico (USA) LLC*,
2020 WL 7075028 (D. Mass. Dec. 3, 2020) ................................... 12

*Thorne v. Square, Inc.*,
2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) .................................... 13

*Willis v. Pac. Mar. Ass'n*,
1997 WL 488581 (N.D. Cal. Aug. 10, 1997) .................................... 9

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
215 Cal. Rptr. 3d 835 (Ct. App. 2017) ............................................ 19

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*,
2020 WL 2730926 (C.D. Cal. Mar. 13, 2020) ................................. 17

**STATUTES**

9 U.S.C. §§ 1-16 ............................................................................. 11

DEFENDANT WALMART INC.'S JOINDER IN DEFENDANT
BLOCK, INC.'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STRIKE CLASS CLAIMS
Case No. 2:23-cv-10335-WLH-MAR

# OTHER AUTHORITIES

*Process*, *Merriam-Webster Online Dictionary*,
    https://www.merriam-webster.com/dictionary/processes (last
    visited Mar. 21, 2024) ........................................................................ 20

*Process*, *Oxford Learner's Dictionaries*,
    https://www.oxfordlearnersdictionaries.com/us/definition/english/
    process1_2 (last visited Mar. 21, 2024) ............................................. 20

*Processor*, *Merriam-Webster Online Dictionary*,
    https://www.merriam-webster.com/dictionary/processor (last
    visited Mar. 18, 2024) ........................................................................ 20

*Processor*, *Oxford Learner's Dictionaries*,
    https://www.oxfordlearnersdictionaries.com/us/definition/english/
    processor (last visited Mar. 21, 2024) ............................................... 20

*Supplier*, *The Britannica Dictionary*,
    https://www.britannica.com/dictionary/supplier (last visited Mar.
    21, 2024) ............................................................................................. 20

*Use*, *Oxford Learner's Dictionaries*,
    https://www.oxfordlearnersdictionaries.com/us/definition/english/
    use (last visited Mar. 21, 2024) ......................................................... 20

*User*, *Oxford Learner's Dictionaries*,
    https://www.oxfordlearnersdictionaries.com/us/definition/english/
    user (last visited Mar. 21, 2024) ........................................................ 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

As explained in Block's motion to compel arbitration, Plaintiff should be compelled to individually arbitrate all claims she asserts in this lawsuit, her class claims should be dismissed (or, in the alternative, stricken) pursuant to the class-action waivers in her arbitration agreements, and her individual claims should likewise be dismissed (or, in the alternative, stayed pending the outcome of the arbitration). *See* ECF No. 48. Walmart joins that motion.[1] Walmart writes separately to explain why Walmart, as a nonsignatory, can enforce the arbitration agreements with respect to Plaintiff's claims against Walmart—including the agreements' clauses delegating all arbitrability issues to the arbitrator.

***First***, the arbitration agreements clearly and unmistakably delegate to the arbitrator all threshold questions of arbitrability. That includes the question whether Walmart, as a nonsignatory, can enforce the arbitration agreements. Accordingly, if this Court grants Block's motion to compel arbitration, that question should be left to the arbitrator.

***Second***, if this Court disagrees that the delegation clauses require the arbitrator to decide arbitrability, the Court should conclude that Walmart may enforce the arbitration agreements between Plaintiff and Block. Walmart is a third-party beneficiary of those agreements and the agreements encompass Plaintiff's claims against Walmart.

---

[1] "It is a common occurrence for parties to join in the motions of other parties," particularly where both parties are "on the same side in a case." *Willis v. Pac. Mar. Ass'n*, 1997 WL 488581, at *2 (N.D. Cal. Aug. 10, 1997). Thus, one defendant has often joined in another defendant's motion to compel arbitration. *See, e.g.*, *Bernstein v. PayReel, Inc.*, 2023 WL 5505872, at *1, *5 (C.D. Cal. July 5, 2023). Joinder is appropriate here because both Walmart and Block seek to compel arbitration based on the same arbitration provisions to which the same party—Plaintiff—agreed to under the same circumstances, and the duplication that would result from filing an entirely separate motion would be wasteful. *See Willis*, 1997 WL 488581, at *2.

**SUPPLEMENTAL BACKGROUND**

This lawsuit arises out of Plaintiff's use of Cash App deposit services at multiple Walmart locations in California.  *See* Compl. ¶¶ 4-5.  Cash App is a primarily smartphone-based application developed and operated by Block, and it allows users to electronically transfer money to other Cash App users.  *See id.* ¶¶ 12, 18, 47.  To do so, a user must sign up for a Cash App account and add funds to their account, which they may then send via the application to other users.  *Id.* ¶¶ 18, 47.

Cash App users can add funds to their own Cash App accounts in multiple ways.  For example, users can electronically transfer funds directly from their bank accounts or debit cards into their Cash App accounts.  *See id.* ¶ 18.  Cash App also enables users to deposit paper money into their Cash App accounts at several participating brick-and-mortar retailers.  *See id.* ¶¶ 18, 47.

One of those retailers is Walmart, which has offered customers a way to deposit paper money into their personal Cash App accounts since October 2021.  *Id.* ¶¶ 61-63.  These cash deposits are accomplished through Cash App barcodes generated within the application.  *Id.* ¶ 47.  Each barcode is active for about ten minutes.  *Id.*  The customer presents the barcode for Walmart to scan, along with the paper money the customer seeks to deposit.  *Id.* ¶ 63.  Walmart accepts the funds, which are then transmitted to the Cash App account associated with the barcode.  *Id.*

As Block has explained, Plaintiff filed this lawsuit despite having agreed to arbitration for any disputes arising out of her use of the Cash App service.  *See* ECF No. 48 at 9-15, 17-20.  Those arbitration agreements are part of the 2015, 2016, and 2023 Cash App Terms of Service ("TOS").  *See* ECF No. 48-7 (2015 Cash App TOS); ECF No. 48-10 (2016 Cash App TOS); ECF No. 48-13 (2023 Cash App TOS).

1    **ARGUMENT**

2    **I.   WALMART'S ABILITY TO ENFORCE THE ARBITRATION**

3    **AGREEMENTS BETWEEN BLOCK AND PLAINTIFF IS A**

4    **QUESTION FOR THE ARBITRATOR TO DECIDE**

5        **A.    The Arbitration Agreements Between Block And Plaintiff Clearly**

6           **And Unmistakably Delegate Threshold Issues Of Arbitrability To**

7           **The Arbitrator**

8         As Block's motion to compel arbitration explains, the arbitration agreements

9    are governed by the Federal Arbitration Act ("FAA").  *See* ECF No. 48 at 15 n.7

10   (citing 9 U.S.C. §§ 1-16).  The FAA "reflects an 'emphatic federal policy in favor

11   of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)

12   (citation omitted).  The FAA requires courts to "rigorously" enforce arbitration

13   agreements "according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506

14   (2018) (citation omitted).[2]  The FAA "leaves no place for the exercise of discretion

15   by a district court, but instead mandates that district courts *shall* direct the parties to

16   proceed to arbitration on issues as to which an arbitration agreement has been

17   signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

18   2000) (citation omitted).  "The court's role under the [FAA] is therefore limited to

19   determining (1) whether a valid agreement to arbitrate exists and, if it does,

20   (2) whether the agreement encompasses the dispute at issue." *Id.*  "If the response

21   is affirmative on both counts, then the [FAA] requires the court to enforce the

22   arbitration agreement in accordance with its terms." *Id.*

23

24       [2] This includes the enforcement of an arbitration agreement's class-action

25   waiver, notwithstanding any state rule to the contrary.  *See Lamps Plus, Inc., v.
     Varela*, 139 S. Ct. 1407, 1418 (2019); *AT&T Mobility LLC v. Concepcion*, 563 U.S.

26   333, 341-52 (2011).  Walmart joins in Block's explanation for why the arbitration
     agreements require Plaintiff to individually arbitrate her claims and why her class

27   claims must be dismissed in accordance with the agreements' class action waiver.

28   *See* ECF No. 48 at 17-20, 23-26.

1    Even that limited role, however, can be further confined in an arbitration
2    provision.  The questions "whether there is an agreement to arbitrate between the
3    parties" and "whether the agreement covers the dispute" are considered "'gateway
4    issues'" of arbitrability.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)
5    (citation omitted).  Resolution of these gateway arbitrability issues is delegated to
6    the arbitrator if the parties' agreement "clearly and unmistakably" provides for such
7    delegation.  *Id.* (citation omitted).

8    A delegation clause "is simply an additional, antecedent agreement the party
9    seeking arbitration asks the federal court to enforce, and the FAA operates on this
10   additional arbitration agreement just as it does on any other."  *Henry Schein, Inc. v.*
11   *Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citation omitted).  Thus,
12   where an agreement clearly and unmistakably delegates arbitrability issues to the
13   arbitrator, the court must enforce the agreement, compel arbitration, and let the
14   arbitrator decide arbitrability.  *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S.
15   63, 65-76 (2010); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1207-09, 1216 (9th
16   Cir. 2016); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *1-5, *8 (N.D. Cal.
17   Feb. 3, 2023).

18   Delegable arbitrability issues include whether a nonsignatory may enforce the
19   arbitration agreement, *see, e.g.*, *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
20   862 F.3d 981, 983-86 (9th Cir. 2017); *Becker v. Delek US Energy, Inc.*, 39 F.4th
21   351, 354-56 (6th Cir. 2022); *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021);
22   *Sauer v. Experian Info. Sols., Inc.*, 2022 WL 2163016, at *3 (C.D. Cal. May 12,
23   2022); *Symonds v. Credico (USA) LLC*, 2020 WL 7075028, at *6 (D. Mass. Dec. 3,
24   2020), as well as challenges a plaintiff may raise to the enforceability of an
25   arbitration agreement, such as a contention that the agreement is unconscionable,
26   *see, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 69 n.1; *Brennan*, 796 F.3d at 1128-34.

27   Here, as explained by Block, one or more agreements to arbitrate were formed
28   because Plaintiff consented to the 2015, 2016, and 2023 Cash App TOS, which

included agreements requiring Plaintiff to individually arbitrate her claims. *See* ECF No. 48 at 9-15, 17-20. These arbitration agreements clearly and unmistakably delegate threshold arbitrability issues—including whether Walmart, as a nonsignatory, can enforce the arbitration agreements—to the arbitrator.

**First**, the plain language of the arbitration provision in the 2023 Cash App TOS expressly delegates arbitrability issues. ECF No. 48 at 20-21. This provision includes a clause that makes clear "the Arbitrator shall be responsible for determining all threshold arbitrability issues, including issues relating to whether the Cash App Terms (or any aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel." ECF No. 48-13 at 90 (§ XII(19)). This language clearly and unmistakably delegates arbitrability to the arbitrator. *See Thorne v. Square, Inc.*, 2022 WL 542383, at *13-14 (E.D.N.Y. Feb. 23, 2022) (finding clear and unmistakable delegation based on the same language from Cash App TOS); *Norman v. Uber Techs., Inc.*, 2021 WL 4497870, at *2 (N.D. Cal. Apr. 14, 2021) (holding arbitration agreement clearly and unmistakably delegated arbitrability to arbitrator where it authorized the arbitrator to resolve disputes "relating to the . . . enforceability" of the agreement and to determine "all threshold arbitrability issues"); *see also, e.g., O'Dell v. Aya Healthcare, Inc.*, 2023 WL 3134173, at *6 (S.D. Cal. Apr. 27, 2023) (similar); *Greder v. Uber Techs., Inc.*, 2018 WL 10017490, at *4 (C.D. Cal. Sept. 5, 2018) (similar).

**Second**, the arbitration agreements in the 2015, 2016, and 2023 Cash App TOS also clearly and unmistakably delegate arbitrability issues to the arbitrator because they incorporate by reference arbitration rules that expressly delegate this authority to the arbitrator. ECF No. 48 at 21-23.

"When the arbitration agreement explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."

1    *Alvarez v. Progress Fin. Co.*, 2014 WL 12605643, at \*6 (C.D. Cal. May 15, 2014)

2    (citation omitted); *see also, e.g.*, *Miller v. Time Warner Cable Inc.*, 2016 WL

3    7471302, at \*5 (C.D. Cal. Dec. 27, 2016) (concluding consumer clearly and

4    unmistakably delegated arbitrability where arbitration agreement incorporated

5    American Arbitration Association rules).

6          Applying that rule, the Ninth Circuit has held that an arbitration agreement

7    that incorporates the rules of the American Arbitration Association ("AAA")—

8    which provide that the "'arbitrator shall have the power to rule on his or her own

9    jurisdiction, including any objections with respect to the . . . validity of the arbitration

10   agreement'"—constitutes a "clear and unmistakable" delegation of arbitrability

11   issues to the arbitrator. *Brennan*, 796 F.3d at 1128, 1130-31. The Ninth Circuit

12   reached that same conclusion for agreements that incorporate the "JAMS arbitration

13   rules," which (like the AAA rules) provide that "[j]urisdictional and arbitrability

14   disputes, including disputes over the formation, existence, validity, interpretation or

15   scope of the agreement under which Arbitration is sought, and who are the proper

16   parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator," and

17   that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability

18   issues as a preliminary matter." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468,

19   481 (9th Cir. 2024) (citation omitted). Thus, "[i]ncorporation of the JAMS

20   arbitration rules by reference constitutes clear and unmistakable evidence that the

21   parties agree to arbitrate arbitrability." *Id.*

22          This precedent compels the conclusion that the arbitration agreements here

23   clearly and unmistakably delegate all arbitrability issues to the arbitrator. Like the

24   arbitration provisions in *Brennan* and *Patrick*, the arbitration provisions in the 2015,

25   2016, and 2023 Cash App TOS incorporate by reference the AAA or JAMS rules:

26      ▪ <u>2015 Cash App TOS</u>: "All Disputes shall be resolved finally and

27          exclusively by binding individual arbitration with a single arbitrator

28          administered by the American Arbitration Association (www.adr.org) or

JAMS (www.jamsadr.com) according to this provision and the applicable arbitration rules for that forum."  ECF No. 48-7 at 13 (§ 30).

- <u>2016 Cash App TOS</u>: "All Disputes will be resolved finally and exclusively by binding individual arbitration with a single arbitrator administered by the American Arbitration Association (https://www.adr.org) according to this Section and the applicable arbitration rules for that forum."  ECF No. 48-10 at 9 (§ 21).

- <u>2023 Cash App TOS</u>: "[A]ll Disputes will be resolved finally and exclusively by binding individual arbitration with a single arbitrator (the 'Arbitrator') administered by the American Arbitration Association (https://www.adr.org) according to this Section and the Consumer Rules . . . ."  ECF No. 48-13 at 89 (§ XIII(19)).

Moreover, as *Brennan* and *Patrick* confirm, the AAA and JAMS rules incorporated in Plaintiff's arbitration agreements each expressly vest, in the arbitrator, the power to resolve threshold issues of arbitrability:

- <u>AAA</u>: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Decl. of Sean Berkowitz in Supp. of Walmart's Joinder in Block's Mot. to Compel Arbitration ("Berkowitz Decl."), Ex. 1 at 17 (Rule 14(a)).

- <u>JAMS</u>: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  Berkowitz Decl., Ex. 2 at 8 (Rule 11(b)).

The arbitration agreements' incorporation of the AAA and JAMS rules is a clear and unmistakable delegation of arbitrability to the arbitrator.  ECF No. 48 at 21-23; *see, e.g.*, *Shihinski v. Wells Fargo, N.A.*, 2023 WL 8099330, at *2-3 (D.N.J. Oct. 23, 2023) (concluding Cash App arbitration provision with such language delegated arbitrability to arbitrator), *report and recommendation adopted*, 2023 WL 8091017 (D.N.J. Nov. 21, 2023); *Shierkatz RLLP v. Square, Inc.*, 2015 WL 9258082, at *5-6 (N.D. Cal. Dec. 17, 2015) (same).  This Court should therefore compel arbitration and allow the arbitrator to resolve any questions of arbitrability.

## B.    Walmart Can Enforce The Delegation Clauses As A Nonsignatory

Although Walmart did not sign the arbitration agreements at issue, it may nonetheless enforce the clauses delegating arbitrability issues to the arbitrator—including the issue whether the nonsignatory can enforce the arbitration provision—for two reasons.

***First***, Walmart can enforce the delegation clauses because the arbitration agreements incorporate arbitration rules authorizing the arbitrator to decide questions of arbitrability and expressly delegate arbitrability issues to the arbitrator.

That conclusion is consistent with the Ninth Circuit's decision in *Portland*. There, the court examined whether an arbitrator, rather than the district court, needed to resolve whether third parties who were not signatories to an arbitration agreement could be parties to the arbitration.  862 F.3d at 983-85.  The arbitration provision at issue stated that any arbitration would be conducted by the International Chamber of Commerce ("ICC").  *Id.* at 984.  The ICC rules stated that the arbitrator will resolve any questions "concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration."  *Id.* at 985.  The Ninth Circuit held that the ICC rules were similar to the AAA rules and clearly delegated issues of arbitrability to the arbitrator.  *Id.*

1    *Portland* therefore rejected the plaintiff's argument that "because [the
2    plaintiff] and [the nonsignatories] never expressly agreed between themselves to
3    delegate issues of arbitrability," the district court must decide whether the dispute
4    with the nonsignatory was subject to arbitration. *Id.* at 985-86. That arbitrability
5    issue, the court explained, was a question of "the scope of the arbitration agreement"
6    that was "delegated to the arbitrators" under the ICC rules. *Id.* at 986.

7    Similarly, in *Swiger*, the arbitration agreement included an express delegation
8    clause authorizing the arbitrator to decide "any issue concerning the validity,
9    enforceability, or scope" of the agreement. 989 F.3d at 503, 506. *Swiger* held that,
10   under that language, the question "whether [a nonsignatory] can enforce the
11   arbitration agreement against [the plaintiff] presents a question of arbitrability that
12   [the plaintiff's] arbitration agreement delegated to an arbitrator." *Id.* at 505-07; *see
13   also, e.g.*, *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756
14   F.3d 1098, 1099-1100 (8th Cir. 2014) (holding arbitrator must decide whether
15   nonsignatory could compel a signatory to arbitrate where the arbitration agreement
16   incorporated by reference AAA rules delegating arbitrability to the arbitrator);
17   *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, 2020 WL 2730926,
18   at *2-3 (C.D. Cal. Mar. 13, 2020) (same holding where arbitration provision
19   incorporated by reference JAMS rules).

20   As explained above, the arbitration agreements here expressly delegate
21   arbitrability issues to the arbitrator and incorporate by reference AAA and JAMS
22   rules that do the same. *See supra* at 5-8. Walmart may therefore enforce the
23   delegation clauses, and the arbitrator must decide whether Walmart may enforce the
24   arbitration agreements.

25   **Second**, as explained in the next section, *see infra* at 10-14, Walmart can
26   enforce the delegation clauses because the arbitration agreements' plain language
27   encompasses the arbitration of disputes with nonsignatory entities. *See, e.g.*, *Sauer*,
28   2022 WL 2163016, at *3 (holding that nonsignatory could enforce the delegation

clause, and that this required all questions of arbitrability—including whether the nonsignatory could enforce the arbitration provision—to be decided by the arbitrator, where the arbitration provision extended to affiliates and gave the arbitrator the exclusive authority to resolve disputes relating to the scope and enforceability of the provision).

In sum, Walmart may enforce the delegation clauses, which clearly and unmistakably require the arbitrator to decide all arbitrability issues—including the question of whether Walmart may enforce the arbitration provision as a nonsignatory.

## II.   IF THIS COURT CONCLUDES IT MUST DECIDE ARBITRABILITY, WALMART MAY ENFORCE THE ARBITRATION AGREEMENTS BETWEEN BLOCK AND PLAINTIFF

### A.   Walmart Can Enforce The Arbitration Agreements Because Walmart Is A Third-Party Beneficiary Of Those Agreements

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  The 2015, 2016, and 2023 Cash App TOS expressly identify California law as the governing law.  *See* ECF No. 48-7 at 14 (§ 31); ECF No. 48-10 at 9 (§ 22); ECF No. 48-13 at 96 (§ XIII(20)).  Accordingly, the question whether Walmart may seek arbitration as a nonsignatory is governed by California law.  *See Kramer*, 705 F.3d at 1128.

Under California law, nonsignatory defendants may enforce an arbitration agreement where, among other circumstances, "the nonsignatory is a third party beneficiary of the agreement." *Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 196 Cal. Rptr. 3d 237, 243 (Ct. App. 2015) (citation omitted); *accord Ronay Family Ltd. P'ship v. Tweed*, 157 Cal. Rptr. 3d 680, 685 (Ct. App. 2013) ("[A] third party

1  beneficiary of an arbitration agreement may enforce it.").  A nonsignatory litigant is
2  a third-party beneficiary entitled to enforce an arbitration agreement under
3  California law if (1) the third party benefits from the contract; (2) "'a motivating
4  purpose of the contracting parties was to provide a benefit to the third party;' and
5  (3) permitting the third party to enforce the contract 'is consistent with the objectives
6  of the contract and the reasonable expectations of the contracting parties.'"  *Ngo v.*
7  *BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (citation omitted).  Here, all
8  three elements are satisfied.

9       The first two prongs of that test are satisfied by the express language of the
10  arbitration agreements, which include companies like Walmart in the list of covered
11  entities.  The 2016 and 2023 Cash App TOS require Plaintiff to arbitrate "any and
12  all disputes," and each of those agreements defines "Disputes" broadly as covering
13  "any claim, controversy, or dispute" with not only Block, but also with Block's
14  "*processors*, *suppliers* or licensors."  ECF No. 48-10 at 9 (§ 20) (emphasis added);
15  *see* ECF No. 48-13 at 87 (§ 18) (same).  And the 2015 Cash App TOS applies to "a
16  dispute of any kind," including disputes with "authorized users . . . of [Block's]
17  services."  ECF No. 48-7 at 13 (§§ 29, 30).

18       Because these terms—*i.e.*, "processors," "suppliers," or "users"—are not
19  defined by the agreements, they are given their ordinary meaning.  *See Wind Dancer*
20  *Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835, 845 (Ct. App. 2017);
21  *Sauer*, 2022 WL 2163016, at *3.  In determining the ordinary meaning of a term,
22  courts refer to dictionary definitions.  *See, e.g.*, *Bunker Hill Park Ltd. v. U.S. Bank*
23  *Nat'l Ass'n*, 180 Cal. Rptr. 3d 714, 724 (Ct. App. 2014).

24       Walmart falls within the ordinary meaning of a "processor."  A "processor"
25  is "a machine, person or company that processes things," and to "process[]"

26
27
28

something means "to deal officially with a document, request, etc."[3]  Walmart falls
within these definitions because it handles, for Block, requests for paper money
deposits into Cash App accounts.  Walmart receives requests, from Block's Cash
App customers, to deposit paper money into a Cash App account.  Walmart then
executes those requests via the same routine: the user presents a barcode for Walmart
to scan, along with the paper money the user seeks to deposit, and Walmart accepts
the funds, which are then transmitted to the Cash App account associated with the
barcode. *See supra* at 2.

Walmart also falls within the ordinary meaning of a "supplier," which is "a
person or company that supplies goods or services."[4]  Walmart is a company that
provides a service:  it accepts paper money from users of Block's Cash App program,
and it deposits that money into a Cash App account   *See supra* at 2.  That is
confirmed by the allegations in Plaintiff's complaint, which explain that Walmart
"partners with Cash App" so that Cash App users can deposit paper money into a
Cash App account.  Compl. ¶¶ 61-62.

The ordinary meaning of "users" also extends to Walmart.  A "user" is "a
person or thing that uses something," and to "use" something means "to do
something with a machine, a method, an object, etc. for a particular purpose."[5]

---

[3]    *Processor*, *Oxford Learner's Dictionaries*,
https://www.oxfordlearnersdictionaries.com/us/definition/english/processor    (last
visited   Mar.   21,   2024);   *Process*,   *Oxford   Learner's   Dictionaries*,
https://www.oxfordlearnersdictionaries.com/us/definition/english/process1_2   (last
visited Mar. 21, 2024); *see also Processor*, *Merriam-Webster Online Dictionary*,
https://www.merriam-webster.com/dictionary/processor (last visited Mar. 18, 2024)
("one    that    processes");    *Process*,    *Merriam-Webster    Online    Dictionary*,
https://www.merriam-webster.com/dictionary/processes (last visited Mar. 21, 2024)
("to subject to or handle through an established usually routine set of procedures").

[4]    *Supplier*, *The Britannica Dictionary*,
https://www.britannica.com/dictionary/supplier (last visited Mar. 21, 2024).

[5]    *User*, *Oxford Learner's Dictionaries*,
https://www.oxfordlearnersdictionaries.com/us/definition/english/user (last visited
Mar. 21, 2024); *Use*, *Oxford Learner's Dictionaries*,

Walmart is a "user" because it does something with Block's services for a particular purpose. To allow Block's users to deposit paper money into a Cash App account, Walmart obtains a Cash App barcode generated by Block, scans that barcode, and deposits the user's paper money into a Cash App account operated by Block. *See supra* at 2.

Because Walmart falls within the enumerated list of entities covered by the 2015, 2016, and 2023 Cash App TOS, the first two prongs of the third-party beneficiary test are satisfied. *See Gold v. Illumina, Inc.*, 2023 WL 4830126, at *2 (N.D. Cal. July 27, 2023) (holding first two prongs of third-party beneficiary test were satisfied because nonsignatory was included in list of entities covered by arbitration provision); *Hajibekyan v. BMW of North America, LLC*, 839 F. App'x 187, 188 (9th Cir. 2021) (holding nonsignatory was third-party beneficiary of arbitration clause because the clause "expressly covers claims between [the plaintiff] and the affiliates of [the defendant]").

Finally, the third prong of the third-party beneficiary test is satisfied here because permitting Walmart to enforce the arbitration agreements "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Ngo*, 23 F.4th at 946 (citation omitted). "To make this determination, [courts] focus on 'the language of the contract and all of the relevant circumstances under which the contract was entered into' to determine if 'third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the enterprise embodied in the contract, read in light of surrounding circumstances.'" *Id.* at 948 (alteration omitted) (citation omitted).

The express inclusion in the 2016 and 2023 Cash App TOS of Block's "processors" and "suppliers"—as well as the inclusion of "authorized users" in the 2015 Cash App TOS—confirms that allowing Walmart to invoke the arbitration

https://www.oxfordlearnersdictionaries.com/us/definition/english/use (last visited Mar. 21, 2024).

agreements is consistent with the signatory parties' objectives and reasonable expectations, given that Walmart is Block's processor and supplier—and a user of Block's services—and the signatories agreed to arbitration with such entities. *See Gold*, 2023 WL 4830126 at *3. Moreover, treating Walmart as a third-party beneficiary of the arbitration agreements is consistent with the "objectives of the enterprise embodied in the contract[s], read in light of surrounding circumstances." *Ngo*, 23 F.4th at 948 (alteration omitted) (citation omitted). The enterprise embodied in the Cash App terms of services is the provision (by Block) and use (by Plaintiff) of a platform through which users can accept, deposit, store, and transfer money. Walmart's role in this enterprise is to accept paper money deposits so that users can convert cash into funds in their Cash App accounts. Permitting Walmart to enforce the agreements will therefore "effectuate the parties' objectives by requiring the arbitration of [cash deposit]-related disputes." *Gold*, 2023 WL 4830126 at *3.

Walmart is thus a third-party beneficiary of the arbitration agreements and is entitled to invoke those agreements against Plaintiff.

## B.    The Arbitration Agreements Cover Plaintiff's Claims Against Walmart

The question whether Plaintiff's claims against Walmart fall within the scope of the arbitration provision is also an arbitrability issue covered by the delegation clause. *See supra* at 4; *Caremark, LLC, v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (holding that where an arbitration agreement "contain[s] an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance"). Accordingly, because the arbitration provisions in the 2015, 2016, and 2023 Cash App TOS clearly and unmistakably delegate arbitrability, the arbitrator must decide that question as well. *See supra* at 4-8; ECF No. 48 at 20-23. But if this Court determines that it, and not the arbitrator, must resolve that question, the Court should

1  find that Plaintiff's claims against Walmart fall within the scope of the arbitration

2  agreements.

3        "It is well established 'that where the contract contains an arbitration clause,

4  there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*,

5  553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs. v. Commc'ns Workers*

6  *of Am.*, 475 U.S. 643, 650 (1986)).  Thus, "[a]ny inquiry into the scope of an

7  arbitration clause begins with a presumption in favor of arbitrability." *Casiano-Bel*

8  *Air Homeowners Ass'n v. Philadelphia Indem. Ins.*, 2017 WL 3273654, at *4 (C.D.

9  Cal. Feb. 22, 2017).  "Plaintiff's claims merely need to 'touch matters' covered by

10  the arbitration clause to fall under it, and doubts are to be resolved in favor of

11  arbitrability." *Id.* at *5.  As Block has explained, that standard is satisfied with

12  respect to Plaintiff's claims in this case.  ECF No. 48 at 23-24.  That includes

13  Plaintiff's claims against Walmart.

14        Plaintiff's agreements here broadly cover all claims related to the use of Cash

15  App.  For example, the 2015 Cash App TOS covers "a dispute of *any kind*."  ECF

16  No. 48-7 at 13 (§ 29) (emphasis added).  The 2016 Cash App TOS similarly covers

17  "*any* claim, controversy, or dispute," including "*any* claims *relating in any way*

18  to . . . the Services," which is defined as Block's "mobile applications, websites,

19  software, hardware, and other products and services."  ECF No. 48-10 at 2, 9

20  (Introduction & § 20) (emphasis added).  And the 2023 Cash App TOS likewise

21  covers "*any* claim, controversy, or dispute," including "*any* claims *relating in any*

22  *way* to . . . the Services," which is defined as Block's "mobile applications, websites,

23  software, cloud-based solutions, and other products and services."  ECF No. 48-13

24  at 2, 87 (Introduction & § 18) (emphasis added).

25        All of Plaintiff's claims against Walmart relate to the use of the Cash App

26  service to transfer funds into a Cash App account.  *See, e.g.*, Compl. ¶ 148 (asserting,

27  as basis for breach of implied covenant claim, that Walmart "failed to fairly

28  investigate and/or prevent fraudulent Cash App deposit transactions at Walmart store

locations and failed to reimburse customers for fraud-induced losses incurred using Cash App deposits at Walmart store locations"); *id.* ¶ 156 (asserting CLRA claim based on "Cash App deposits that Plaintiff made at and through California Walmart store locations"); *id.* ¶ 167 (asserting, as basis for UCL claim, that "Walmart engaged in the business act and/or practice of facilitating Cash App deposits by accepting paper money to be deposited into Cash App accounts at its Walmart store locations throughout California"); *id.* ¶¶ 179-83 (asserting negligence claim based on Walmart's alleged failure to prevent and warn of fraud when accepting paper money deposits for Cash App users).

Thus, at a minimum, Plaintiff's claims against Walmart touch on the matters covered by the arbitration agreements. This Court should therefore compel Plaintiff to arbitrate her claims against Walmart. *See Comedy Club*, 553 F.3d at 1284 ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (alteration in original) (quoting *AT&T Techs.*, 475 U.S. at 650)).

## III.   THE COURT SHOULD DISMISS (OR STRIKE) THE CLASS CLAIMS AND DISMISS (OR STAY) PLAINTIFF'S INDIVIDUAL CLAIMS

As Block's motion to compel arbitration explains, once Plaintiff's claims are compelled to individual arbitration, her class claims must be dismissed (or stricken) in accordance with the class action waivers in the arbitration agreements and her remaining individual claims should be dismissed (or stayed pending the outcome of the arbitration). *See* ECF No. 48 at 25-26.

# CONCLUSION

For all these reasons, and for the reasons stated in Block's motion to compel arbitration, this Court should order Plaintiff to individually arbitrate all claims asserted in her complaint against Walmart and Block and dismiss this case in favor of arbitration in accordance with the FAA and Plaintiff's arbitration agreements.

Dated: March 21, 2024                    Respectfully submitted,

LATHAM & WATKINS LLP

By  */s/ Sean M. Berkowitz*
    Sean M. Berkowitz *(pro hac vice)*
    *Attorney for Defendant Walmart Inc.*

# RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Walmart Inc., certifies that this brief contains 5041 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 21, 2024                    By  */s/ Sean M. Berkowitz*
    Sean M. Berkowitz *(pro hac vice)*